IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2003

## STATE OF TENNESSEE v. FREDRICK ROBINSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-14644     Joseph B. Dailey, Judge**

---

**No. W2002-00601-CCA-R3-CD  - Filed May 28, 2003**

---

The defendant was convicted by a Shelby County Criminal Court jury of aggravated burglary, a Class C felony, and sentenced by the trial court as a Range III, persistent offender to fifteen years in the Department of Correction.  In this appeal as of right, he raises two issues:  whether the evidence was sufficient to support his conviction and whether the trial court committed reversible error by failing to instruct the jury on the lesser-included offense of facilitation.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

A C Wharton, Jr., Shelby County Public Defender; W. Mark Ward, Assistant Public Defender (on appeal); and Kathy Kent, Assistant Public Defender (at trial), for the appellant, Fredrick Robinson.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen P. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At approximately 4:00 p.m. on August 11, 2000, the victim in this case, Charlie Munford, returned to his Memphis home to find that the glass in his bedroom window had been broken out and that his television and jewelry were missing.  The defendant, Fredrick Robinson, was arrested and charged with the aggravated burglary of the victim's residence after police officers discovered that the victim's televison had been pawned the day of the burglary and that the pawn ticket contained the name and thumbprint of the defendant.

The victim testified at the defendant's December 10-12, 2001, trial, that he left for work at 5:00 a.m. on August 11, 2000, and returned at 4:00 p.m. to find his door still locked, but the glass broken out of his large bedroom window and his twenty-five-inch RCA color televison and some jewelry missing. He had the original paperwork from his purchase of the televison, and consequently was able to provide the police officers who responded to his call with its serial number. The police later contacted him to inform him they had recovered the televison and, on August 31, 2000, had him come to the police station to identify it and to view a photographic spreadsheet containing the defendant's photograph. The victim testified he was able to identify the defendant as a man who had been by his residence a few times attempting to buy a car from him. He said on one occasion the defendant had come to his open door, from which position it would have been possible for him to see the victim's television.

The victim testified the rooms he lived in were on the second floor of a house that had been converted into eight separate rental units. His bedroom window overlooked a one-story section of the building, which he estimated was about eight or nine feet tall, with the roof approximately two feet below his window. The victim said his television was heavy and could have weighed more than fifty pounds. He testified the broken window provided ample room for the television to have been removed from his residence.

Sergeant Joseph Anthony Benya of the Memphis Police Department testified he learned during his investigation of the burglary that the serial number from the victim's television matched that of a television pawned at a "Cash America Pawn" store. The pawn ticket contained the defendant's name and thumbprint and reflected that the televison was pawned on the day of the burglary, August 11, 2000, at 1:30 p.m. Sergeant Benya said when he informed the defendant on August 31, 2000, that he was being arrested for aggravated burglary, the defendant said, "It's got to be about that TV." According to the witness, the police department's database of pawned items revealed that in addition to the television the defendant pawned on August 11 at the Cash America Pawn store, he had pawned a "play station" at another pawnshop on August 5, and two bicycles at a third pawnshop on August 16. Sergeant Benya acknowledged that the database search of items pawned in Shelby County from January 1 through August 31, 2000, did not reveal any record of the defendant's having pawned the victim's jewelry.

Sergeant Michael Freeman testified he worked in the "pawnshop detail" of the Memphis Police Department's burglary division. He explained that pawnshops are required by state law to submit information on each pawned item into a central data base that officers in the pawnshop detail routinely check against reports of stolen property. He said details submitted about the individual pawning the item include "[t]he person's name, address, date of birth, height, weight, driver's license number, or ID number, and . . . a thumbprint." He testified that at Sergeant Benya's request, he ran a search on the serial number of a television, which he subsequently located and retrieved on August 22, 2000, from a Cash America Pawn store at 970 Crump Boulevard. Sergeant Freeman identified the pawn ticket he retrieved with the televison, which was admitted as an exhibit in the case.

Tonnye Irons testified he was the shop manager of the Cash America Pawn store on Crump Boulevard at the time the television was pawned, and that the pawn ticket reflected he was the employee who handled the transaction. He said the ticket indicated that an individual named "Fredrick Robinson" pawned the television at 1:36 p.m. on August 11, 2000, receiving $100 in cash from the store. Irons acknowledged he had no specific recollection of the incident and, thus, no memory of whether the individual had been alone or accompanied by others at the time he pawned the television.

Bobby Spence, a fingerprint technician in the Records and Identification Division of the Shelby County Sheriff's Department who was accepted by the trial court as an expert in fingerprint identification, testified that on August 30, 2000, he identified the thumbprint on the pawn ticket as that of the defendant.

Following the trial court's denial of the defendant's motion for judgment of acquittal, the defendant presented one witness in his defense, Yolanda Miller, who testified she was a friend of the defendant and was with him on the day of the burglary. She said she called the defendant at his house sometime after 9:00 a.m. to ask him to take her to the mall. The defendant agreed, first driving her to pick up her boyfriend at his home and then driving them to the Oak Court Mall, where she, her boyfriend, and the defendant shopped and walked around for "[a]bout two hours." Miller said that she and the defendant then dropped her boyfriend back at his home before stopping by the Cash America Pawn store on Crump Boulevard in order for her to look for a necklace to purchase. She testified that she and the defendant were at his car preparing to leave the store when two or three men approached the defendant to ask him to pawn a television for them. Miller indicated, however, that she had not heard the actual conversation, testifying that the men spoke to the defendant rather than to her and that "[f]rom [her] knowledge that's what was told." She testified that the men who approached the defendant retrieved the television from another car, she did not see a television or broken glass in the defendant's car, and she did not see any scratches, injuries, or broken glass on the defendant's person. Miller said the defendant was with her from approximately 9:00 a.m. until "close to two probably." She acknowledged on cross-examination, however, that she was relying on defense counsel for the date the defendant accompanied her to the mall and pawnshop, as other than knowing it was in August, she "really [did not] know what day."

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first challenges the sufficiency of the convicting evidence, arguing that there was insufficient evidence to establish his identity as the culprit. He notes there was no direct evidence of his guilt and asserts that the circumstantial evidence, including his possession of recently stolen property, was insufficient to justify a rational trier of fact finding him guilty of the offense beyond a reasonable doubt, especially in light of the credible explanation he offered as to how he had come into possession of the television. The State responds by arguing that the jury was entitled to disbelieve the defendant's explanation, and that proof, *inter alia*, that the defendant pawned the

television before the victim even reported the burglary was more than sufficient to support its verdict finding the defendant guilty of the offense. We agree with the State.

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.").

Circumstantial evidence alone may be sufficient to support a conviction in Tennessee. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). If based entirely on circumstantial evidence, however, the evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt.'" Tharpe, 726 S.W.2d at 900 (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)). The standard for appellate review is the same whether the conviction is based on direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.1990).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of

demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of aggravated burglary, which is defined as burglary of a habitation. See Tenn. Code Ann. § 39-14-403(a) (1997). Burglary is defined:

> (a) A person commits burglary who, without the effective consent of the property owner:
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
> (3) Enters a building and commits or attempts to commit a felony, theft or assault; or
> (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Id. § 39-14-402(a). "[U]nsatisfactorily explained possession of recently stolen property may be sufficient in and of itself to establish a burglary." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995) (citing State v. Hamilton, 628 S.W.2d 742 (Tenn. Crim. App. 1981)).

Viewed in the light most favorable to the State, the evidence was sufficient to support the defendant's conviction for aggravated burglary. The proof at trial established that someone broke into the victim's residence between the hours of 5:00 a.m. and 4:00 p.m. on August 11, 2000, and stole the victim's television and jewelry. At approximately 1:30 p.m. that same day, before the victim had even discovered the burglary, the defendant pawned the victim's television at a Cash America Pawn store on Crump Boulevard, receiving $100 in cash for the transaction. The defendant had been to the victim's home several times before the burglary and had stood at the open door where he could have seen the victim's television. From these facts, a rational jury could have reasonably inferred that the defendant was the perpetrator and found him guilty of the burglary of the victim's residence beyond a reasonable doubt.

The defendant argues his possession of the stolen television was insufficient to support an inference he was guilty of aggravated burglary in light of the "credible explanation as to how he had come into possession of the television." However, the jury chose not to accredit the innocent explanation offered by the defendant's friend at trial, and acted within its prerogative in finding the defendant guilty of aggravated burglary. In Jones, a jury found the defendant guilty of aggravated burglary based solely on his possession of a stolen VCR, in spite of testimony from the defendant's friend that he witnessed the defendant purchase the item from two men on the street shortly before he was stopped by police. Id. at 395-96. In the instant case, in addition to the defendant's possession

of recently stolen property, there was also evidence that the defendant had been to the victim's home prior to the burglary and had stood in a position where he could see the victim's television. We conclude, therefore, that the evidence in this case was sufficient to support the defendant's conviction for aggravated burglary.

## II. Facilitation Instruction

The defendant next contends that the trial court committed reversible error by refusing to instruct the jury on facilitation as a lesser-included offense of aggravated burglary. At the conclusion of the proof, defense counsel requested that the trial court instruct the jury on facilitation as a lesser-included offense. The trial court refused, concluding that there was no evidence to support a charge on facilitation. The trial court stated:

> Facilitation requires that the defendant knew that another person intended to commit the specific felony of burglary. That's where I'm not sure it fits. The inference can be drawn from his possession of recently stolen property that he was the – the thief.

> But I'm not sure you can draw an inference that – that the [sic] wasn't the thief, but he did know that somebody else was going to do it. I'm not sure that can be read into that charge on recently – possession of recently stolen property. But facilitation does require that a defendant knew that another person intended to commit the specific felony of burglary but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or result of the offense. You can't get there from – by either theory.

> By . . . your theory, the defense theory, he wouldn't have anything to do with it, he didn't know anything about it. He was innocently pawning a TV for some guy he didn't know who caught him on the sidewalk and said, would you please pawn this for me? Well, okay.

> By the state's theory, they get in there stealing it, burglarizing and stealing it, through the inference of recent – possession of recently stolen property. Which is fine. But that can't be carried over one step beyond to infer that the defendant didn't do it, didn't intend to do it, didn't want to do it, but he did know that somebody else intended to commit it and then furnish substantial assistance to that person in the commission of the felony.

-6-

See what I'm saying. I just don't know how you get to – I wouldn't mind charging it. I pulled it, I looked at it. But I don't know how you get to that under these facts.

The trial court did, however, instruct the jury on criminal responsibility, agreeing with the prosecutor that evidence that the victim's twenty-five-inch television had been removed through the window of a second story apartment, "could fairly raise the argument that that reasonably would have required more than one person to complete."

The defendant argues that the same proof the trial court found sufficient to justify instructing the jury on criminal responsibility was also sufficient to warrant an instruction on facilitation, and the jury could have inferred from such evidence that he was guilty of facilitation rather than aggravated burglary. The State contends there was no proof submitted under which a jury could have found the defendant guilty of facilitation, and, thus, the trial court did not err in refusing to submit the instruction. We review this issue *de novo*, with no presumption of correctness given to the trial court's determination as to which lesser-included offenses to charge. See State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001).

When an issue is raised regarding the trial court's failure to instruct on a lesser-included offense, we must determine: (1) whether the offense is a lesser-included offense under the test adopted in State v. Burns, 6 S.W.3d 453 (Tenn. 1999); (2) whether the evidence supports an instruction on the lesser-included offense; and (3) whether the failure to instruct on the lesser-included offense constitutes harmless error. State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002). Part (c) of the Burns test provides that an offense is a lesser-included offense if it consists of "facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b)." 6 S.W.3d at 467. Therefore, facilitation of aggravated burglary is a lesser-included offense of aggravated burglary.

The next step of our inquiry is an examination of the evidence to determine if an instruction on facilitation was warranted. Allen, 69 S.W.3d at 187. This involves a two-step process: first, determining whether any evidence exists that reasonable minds could accept in support of the lesser-included offense, and second, determining if the evidence, viewed in the light most favorable to the existence of the lesser-included offense, is legally sufficient to support a conviction for the lesser-included offense. Id. It is the evidence, and not the theory of the parties, to which we look to determine whether an instruction on a lesser-included offense was warranted. Id. at 188. "In sum, when a reviewing court determines whether a lesser-included offense ought to be charged, the evidence clearly controls. If there is evidence sufficient to support a conviction for a lesser-included offense, we hold that a trial court must charge that offense." State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002).

A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]"

Tenn. Code Ann. § 39-11-402(2) (1997). A conviction for facilitation, on the other hand, requires proof that a person, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2)," "knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (1997). Thus, to find the defendant guilty of facilitation of aggravated burglary beyond a reasonable doubt, the jury would have to conclude that the defendant, although not acting with the intent to promote the burglary or benefit in the proceeds or results, nevertheless furnished substantial assistance to the actual burglar knowing of his intent to commit the crime. Here, there were no facts which would support a charge on facilitation. We conclude, therefore, that the trial court properly refused to submit the instruction to the jury. See Allen, 69 S.W.3d at 187.

### CONCLUSION

We conclude the evidence supports the defendant's conviction for aggravated burglary and that there was no evidence presented which would support a charge of facilitation of aggravated burglary. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE