IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 9, 2003 Session

## KENNETH HERRING v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Wayne County**
**No. 12850     M2003-01731-CCA-R3-PC, Stella Hargrove**

---

**No. M2003-01731-CCA-R3-PC - Filed March 29, 2004**

---

The Appellant, Kenneth Herring, appeals as of right from the judgment of the Wayne County Circuit Court denying his petition for post-conviction relief. Herring was convicted in 1999 of two counts of aggravated sexual battery. On appeal, Herring first argues that his right to due process was violated when the trial court failed to exclude a confession obtained as a result of a "coercive and deceitful" environment during interrogation and that trial counsel was ineffective for failing to seek suppression on this ground. He next contends that trial counsel was ineffective for failing to file a motion to sever the seven indicted offenses, which resulted in his two convictions. After review of the record, dismissal of the petition is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, for the Appellant, Kenneth Herring.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and J. Douglas Dicus, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

The Appellant was charged in two separate indictments with one indictment charging one count of aggravated sexual battery and the other indictment charging six counts of rape of a child. After a jury trial, he was convicted of one count of aggravated sexual battery as charged, five counts of rape of a child as charged, and one count of aggravated sexual battery as a lesser-included offense

of rape of a child.  On appeal, this court reversed and remanded the five convictions for rape of a child because the State failed to properly elect between multiple instances of sexual conduct.  *See State v. Kenneth Lee Herring*, No. M1999-00776-CCA-R3-CD (Tenn. Crim. App. at Nashville, Aug. 24, 2000), *perm. to appeal denied*, (Tenn. 2001).  This court further held that the remaining two convictions for aggravated sexual battery should be remanded "to determine whether concurrent or consecutive sentences are appropriate."  *Id.*  The following facts, as recited by this court, are relevant to the issues presented on appeal:

> The victim in this case, A.H.,[1] who was nine-years old at the time of the offenses, testified that the Defendant came to live with her, her mother, and her little brother during September of 1997.  Approximately two to three weeks later on a weekend night she and the Defendant were in the living room watching television when the Defendant asked her to come over and lie beside him on the couch.  A.H. complied, and the Defendant started "tickling" her in her genital area.  A couple of days later, the Defendant showed A.H. how to "suck his weiner," which he called his "dick," by placing his finger in A.H.'s mouth.  He then placed his penis in A.H.'s mouth, telling her what to do.  He told A.H. that if she told anyone, she would be sent to a foster home, and he would kill her mother when he got out of jail.  A.H. then testified that the Defendant placed his penis in her mouth "a lot," which she agreed was more than four times, but she did not specifically describe any of those other incidents.  She said that it happened about every other day.  She said that he also touched and rubbed her "down there," and that he did that "a lot."
>
> A.H. testified that around Christmas of 1997, the Defendant started to "put his wiener inside" her.  She said that he placed his penis in "both her privates."  This abuse usually occurred while her family was asleep, and if she started to cry or yell loudly, he would place a pillow over her face so that no one could hear her cries.  He did not place his entire penis inside her, but he placed "some of it" in her.  A.H. said that the Defendant placed his penis inside her ten to twelve times around Christmas time, but she did not further identify any particular instance.
>
> Sometime after Christmas but before Easter, A.H. moved with her family and the Defendant from the trailer park where they had lived to a place further out into the country.  The sexual contact continued after they moved.  A.H. said that the Defendant also put his finger and a candle in her.  He put the candle in her "butt."  She could not remember whether he put the candle in her before or after Easter, but she said that he only did it once.  She testified that he put his finger in her "a lot," which she said was more than ten times.  She also said that sometimes the Defendant would put Vaseline in her to make penetration easier.  The last time that the

---

[1]In order to protect the identity of minor victims of sexual abuse, it is the policy of this court to refer to the victims by their initials.  *State v. Schimpf*, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App. 1989).

Defendant did anything to her was days before he moved out, which was sometime before school was out in May.

The Defendant testified and denied any sexual contact with or penetration of A.H. However, he had given a statement to Tom Workman, an investigator with the District Attorney General's Office, which was written down by Mr. Workman and signed by the Defendant. That statement, which was introduced as an exhibit, provided as follows:

> I did. She performed oral sex on me two or three times. I didn't cum every time. I did one time and that's because I masturbated. I stuck my finger in her one time about one half inch and she said it hurt and I stopped. I fondled her five or six times. I performed oral sex on her two or three times. I put my tongue on her. She put Vaseline on me and herself. I enjoyed it at the time but afterwards I knew it was wrong. I need help but prison will not help anybody.

At trial, the Defendant testified that the statement was false and that he was under the influence of cocaine when he made the statement.

*Id.* Following a new sentencing hearing, the trial court determined that the sentences should be served consecutively for an effective sentence of twenty-four years incarceration. The trial court's sentencing decision was affirmed on appeal. *See State v. Kenneth Herring*, No. M2001-00751-CCA-R3-CD (Tenn. Crim. App. at Nashville, Feb. 11, 2002), *perm. to appeal denied*, (Tenn. 2002).

On September 27, 2000, the Appellant filed a *pro se* petition for post-conviction relief. Following the appointment of counsel, the petition was amended, wherein the Appellant sought relief on the following grounds.

(1) [T]he trial court failed to exclude a confession that was obtained involuntary. The confession obtained by the investigator for the District Attorney General, Tom Workman, was obtained as a result of his improper administration of the Miranda Warnings, creating a coercive and deceitful environment for the interrogation.

(2) [H]e was denied his Constitutional rights . . . due to ineffective assistance of trial counsel . . . in failing to file a motion for severance of the offenses pursuant to Rule 14(b)(1), Tennessee Rules of Criminal Procedure. . . . Through joinder of the offenses and trial counsel's failure to move to sever the offenses, the jury was given the opportunity to consider the [Appellant's] propensity to commit sex crimes which prejudiced him in the two aggravated sexual battery counts of which he was convicted.

An evidentiary hearing was held on February 5, 2003, and the post-conviction court thereafter denied the Appellant post-conviction relief. This timely appeal followed.

## ANALYSIS

The Post-Conviction Procedure Act, Tennessee Code Annotated §§ 40-30-101 to -313 (2003), provides a method by which a defendant may challenge a conviction or sentence for violation of a state or federal constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-110(f) (2003).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must establish, under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984): (1) deficient representation and (2) prejudice resulting from the deficiency. Thus, the Appellant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and the Appellant must demonstrate that counsel's errors were so serious as to deprive the Appellant of a fair trial, a trial whose result is reliable. *Id.*

With respect to deficient performance, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Additionally, this court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *see Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

### I. Confession

Investigator Tommy Workman of the Attorney General's Office and Chief Deputy Jerry Hailey of the Wayne County Sheriff's Department went to the Appellant's home and asked him to

accompany them to the courthouse for questioning. The Appellant asked if he was under arrest, and Chief Hailey responded that "he was not under arrest, that [they] just wanted to talk to him." While they were en route to the courthouse, the Appellant again asked if he was under arrest and what effect that would have on his current probation. Upon arriving at the courthouse, Workman and the Appellant went into an interview room. Jennie Horton, a counselor for the Tennessee Department of Children Services, was also present. Workman then read the Appellant his *Miranda* rights and asked him to sign a Waiver of Rights form. The Appellant asked what it was that Workman wanted to talk to him about. Workman stated, "Well, until you understand your rights and sign this form, I can't talk to you about it." The Appellant was asked if he understood his rights, to which he responded affirmatively, and he then signed the Waiver of Rights form. Workman began questioning the Appellant, which led to a signed confession. Shortly thereafter, the Appellant was arrested.

The Appellant presents the novel argument that the waiver of his *Miranda* rights "had absolutely no legal effect" because he was not in custody at the time that Investigator Workman read him his rights and he signed the Waiver of Rights form. Specifically, he contends that:

> By [Investigator Workman] telling [him] that he could not talk to him until he signed a waiver can only be concluded by the court as a willful attempt to create a coercive and deceptive environment. . . . He knew the Miranda warnings were not applicable when the accused was not in-custody, but led the accused to believe that the questioning could not go on without an understanding of the rights and a waiver of them.

Additionally, he argues that "the failure of trial counsel to pursue these grounds for suppression as an involuntary statement demonstrated a deficiency in counsel's performance."

The Fifth Amendment protection against self-incrimination "privileges [a person] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984). In fact, the statements of an accused made during the course of custodial interrogation are inadmissible as evidence unless the State establishes that the accused was advised of certain constitutional rights and waived those rights. *State v. Anderson*, 937 S.W.2d 851, 853 (Tenn. 1996). Although we acknowledge an individual's constitutional right against self-incrimination and right to be forewarned of these rights, we likewise recognize that voluntary statements, even if incriminating, are not *per se* barred by the Fifth Amendment. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *see also California v. Beheler*, 463 U.S. 1121, 1123, 103 S. Ct. 3517, 3519 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S. Ct. 711, 713 (1977); *Beckwith v. United States*, 425 U.S. 341, 346-47, 96 S. Ct. 1612, 1616 (1976). It is only when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning that the privilege against self-incrimination is jeopardized, requiring the authorities to adequately advise the individual of his

constitutional protections. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612. In other words, before *Miranda* warnings are required, the accused must be the subject of custodial interrogation. *Id.*

In determining whether an individual is "in custody" as contemplated by *Miranda*, it is incumbent upon the reviewing court to decide whether, "under the totality of circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." *Walton*, 41 S.W.3d 75, 82 (Tenn. 2001); *see Anderson*, 937 S.W.2d at 855. Factors relevant to this determination include, but are not limited to, the following: (1) the time and location of the interrogation; (2) the duration and character of the questioning; (3) the officer's tone of voice and general demeanor; (4) the suspect's method of transportation to the place of questioning; (5) the number of police officers present; (6) any limitation on movement or other form of restraint imposed on the suspect during the interrogation; (7) any interactions between the officer and the suspect; (8) the suspect's verbal or nonverbal responses; (9) the extent to which the suspect is confronted with the law enforcement officer's suspicions or evidence of guilt; and (10) the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. *Anderson*, 937 S.W.2d at 855 (citations omitted).

Here, Investigator Workman and Chief Deputy Hailey went to the Appellant's home and requested him to accompany them to the courthouse for an interview. Upon arriving at the courthouse, the Appellant was taken into an interview room. The questions concerned instances of improper sexual contact with the minor victim. While the Appellant was told he was not under arrest at the time of questioning, we conclude that he was "in-custody" as contemplated *Miranda*. "In-custody" and "under arrest" are not synonymous. Furthermore, we are perplexed as to how the giving of *Miranda* warnings could coerce someone into making damaging admissions of criminal activity. Accordingly, we conclude that the trial court did not violate the Appellant's due process rights by allowing the confession to be admitted into evidence and that trial counsel was not deficient in failing to pursue this ground for suppression.[2]

## II. Motion to Sever

Next, the Appellant contends that the trial counsel was ineffective because he failed to move for a severance of the seven offenses presented to the jury, *i.e.*, six counts of rape of a child and one count of aggravated sexual battery. Regarding this issue, the post-conviction court concluded that:

> [Trial counsel] testified that he discussed with [the Appellant] his right to move to sever the offenses. He testified that [the Appellant] did not want the offenses severed, insisting that it would take a long time to try each count while he was in

---

[2]The Appellant's position at trial was that at the time of his confession he was under the influence of cocaine. Indeed, the record reflects that this issue was fully addressed following trial counsel's pre-trial motion to suppress based upon this ground. After a hearing, the trial court found that the Appellant's confession was "freely and voluntarily" given.

custody unable to make bond. He testified that [the Appellant] was convinced that at trial he would not be convicted on any count. In weighing the desires of [the Appellant] and in reviewing the current, uncertain status of case law on severability in sex cases, [trial counsel] made the decision to forego a motion to sever. The Court does not necessarily agree with [the Appellant's] attorney when he states that there was high probability that the Court would have granted a motion to sever, ultimately affecting the "judgment."

First, we are constrained to note that the record is devoid of any evidence that the State ever moved to consolidate the two indictments pursuant to Rules 8 and 13 of the Tennessee Rules of Criminal Procedure. Rule of Criminal Procedure 12(b)(5) requires that motions for consolidation of indictments be made prior to trial, and courts have interpreted the phrase "prior to trial" to mean "sometime earlier than 'the day of the trial when the jury is waiting in the hall.'" *Spicer v. State*, 12 S.W.3d 438, 444 n.6 (Tenn. 2000) (quoting *State v. Hamilton*, 628 S.W.2d 742, 744 (Tenn. Crim. App. 1981)). However, because there are exceptions to this rule and because this issue has not been raised and preserved by the Appellant, we do not address its impact on this case. *Id.* (citing Tenn. R. App. P. 13(b); 36(a)).

In the present case, trial counsel testified that he talked with the Appellant and explained that trying all of the offenses separately might take a year or two. In addition, because the Appellant was convinced that he would be acquitted, he did not want to remain in custody any longer than necessary. According to trial counsel, the Appellant wanted all of the offenses tried together. The post-conviction court accredited the testimony of trial counsel that it was the Appellant who chose not to seek severance of the offenses. Counsel is afforded discretion in conducting the defense and is entitled to use his or her best judgment in matters of trial strategy or tactics. *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1991) (citing *McBee v. State*, 655 S.W.2d 191, 193 (Tenn. Crim. App. 1983)).

Perhaps of greater importance is the question of whether a motion to sever would have been meritorious under the facts of this case. To establish deficient performance, the Appellant is required to prove by clear and convincing evidence that trial counsel would have prevailed on such a motion. The indictment counts charge that all of the seven offenses occurred during the period of September 1997 and June 1998 and that they were committed against the same victim. The proof established that during this period the Appellant was cohabitating with the minor victim and her mother. The Appellant concedes that the seven counts in the two indictments would have "been admissible in trials of the others." We conclude that the Appellant has failed to prove by clear and convincing evidence that a Rule 14 severance of the seven offenses would have been granted.[3]

Moreover, we cannot ignore the fact that all five of the Appellant's convictions for child rape were reversed on direct appeal due to the State's failure to properly elect offenses. Had the offenses

---

[3]A severance of the offenses shall be granted "unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Tenn. R. Crim. P. 14(b)(1).

been severed, reversal would have been less likely. Furthermore, any failure to sever the offenses was harmless. *See, e.g., State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999); *State v. Stephen Denton*, No. E2000-02615-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Oct. 28, 2003), *perm. to appeal filed*, (Tenn. Dec. 12, 2003). The Appellant suffered no prejudice. This issue is without merit.

## CONCLUSION

Based upon the foregoing reasons, we do not find that the Appellant's due process rights were violated by the admission of his confession or that he received the ineffective assistance of counsel. Accordingly, the judgment of the Wayne County Circuit Court dismissing the Appellant's petition for post-conviction relief is affirmed.

_____
DAVID G. HAYES, JUDGE