**Johnny BUSH, Jr., Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

June 16, 1975.

Certiorari Denied by Supreme Court Sept. 15, 1975.

James L. Woodward, Franklin, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Elmer Davies, Dist. Atty. Gen., Franklin, Douglas T. Bates, III, Asst. Dist. Atty. Gen., Centerville, for defendant-in-error.

RUSSELL, Judge.

## OPINION

This is an appeal in the nature of a writ of error by Johnny Bush, Jr., from his grand larceny conviction in the Circuit Court of Williamson County. Punishment was set at not less nor more than three (3) years in the penitentiary.

On the night of November 8, 1973, approximately five hundred pounds of copper wire belonging to the Louisville & Nashville Railroad Company was cut from active lines in Williamson County and taken away. When the lines went dead the site of the theft was shortly determined, and an on-site investigation disclosed the quantity and type of wire stolen. Potential purchasers of the stolen wire were immediately advised to be on the look-out for it; and the very next morning an employee of such a dealer, Steiner-Liff Iron and Metal Company in Nashville, advised authorities of a purchase of four hundred eighty-two pounds of such wire from one Mike Maynard, who delivered it in a car traced to plaintiff-in-error and who was accompanied by two other men. Railroad authorities identified this as the stolen wire.

Both Mike Maynard, who is a brother-in-law of plaintiff-in-error, and Charles Eric Bennett, testified for the State and said that the theft was the work of themselves and Johnny Bush, Jr., the plaintiff-in-error. Both of them had already pled guilty and were serving their sentences. They involved Bush as the one who furnished the car for transportation, and as the person who actually cut the wire down from the poles for them to roll up. They said that all three shared equally in the money received for the wire, receiving roughly eighty dollars ($80.00) each.

Johnny Bush, Jr., did not testify, nor offer any proof in his defense.

■ Four errors are assigned. It is said that the weight of the evidence preponderates against the verdict and in favor of innocence. On the contrary, the evidence of guilt is undisputed, except by an incredible exculpatory statement given to officers by Bush immediately after his arrest, and which will be dealt with in more detail subsequently.

■ It is contended that there was no evidence to corroborate the testimony of the two accomplices. Bush admitted being with the other two men immediately before the theft, of leaving his car for their use, and of accompanying them to Steiner-Liff in his car the next morning. Another witness, one Jack Watkins, testified that a car similar to defendant's was parked near the

area of the theft. The fact that the theft was apparently carried out in plaintiff-in-error's car, and the stolen wire delivered in same the very next morning by him and two others, strongly points to his guilt even without the testimony of the accomplices. The corroboration necessary to support the testimony of an accomplice is some fact, testified to entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but that the defendant is implicated in it, and the corroboration must consist of some fact that affects the identity of the party accused. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460 (1963). The evidence herein clearly passes this test. By his own admission the stolen wire was in his possession in his automobile shortly after the theft, and the innocent cast which he sought to give to that possession was logically rejected by the jury.

■ The remaining two assignments of error are somewhat inconsistent. It is contended that it was error to allow into evidence post-arrest statements made by Bush, "there being no evidence that the defendant later waived his right to remain silent"; and that it was error to charge the jury as to a confession, "in view of the fact that no confession by defendant was admitted into evidence".

What happened was that after his arrest and full *Miranda* warning, Bush, while admitting that he thought that he understood the rights explained and read to him, refused to sign a written waiver, being unable to read and write, because, "I didn't know what it was". Bush, upon the suppression hearing, testified further: "I thought though I understood when he asked me my rights I thought I understood them, I ain't too sure if I did or didn't at the time. That's what I told him, I think I do." When the trial judge asked him why he didn't sign the written waiver he answered: "Well, I guess there'd be no reason, just that I don't sign nothing that I don't know what it is. * * * I told them I couldn't read and write and I didn't know what the

paper was and I wasn't going to sign it." After refusing to sign the waiver Bush readily answered the questions asked him, told the investigators that he had been out with Mike Maynard and Eric (Bennett) that afternoon in his car, that he left his car at Mike's trailer about 5:30 p. m. and drove his truck to his sister's house, that Mike and Eric came to the sister's house about 10 p. m. and that he didn't know where they had gone or what they had done. He further told the investigators that the following morning he drove his car, accompanied by Mike and Eric, to Steiner-Liff, where "Mike sold something". He claimed that he didn't know what it was and didn't get any money himself.

■ While this statement was undoubtedly meant to be exculpatory, it did admit to circumstances which tended to show guilt. The statement was voluntarily made, after full *Miranda* advice, so was not illegally obtained. Signing a written waiver is not the exclusive way to manifest a valid waiver of *Miranda* rights. Voluntary and spontaneous response to questions, after full advice admittedly understood, manifests such a waiver, *McGee v. State*, 2 Tenn.Cr.App. 100, 451 S.W.2d 709. This is especially true where the statements are facially exculpatory. There was no claiming of the right to remain silent, or of having an attorney present; but merely the refusal to sign anything. This was followed by a voluntary response to interrogation, with the answers given designed to be self-serving. No *Miranda* violation is present in such a context.

■ Finally, the trial judge charged the jury: "If oral or written confessions have been proven in this case * * *", followed by the law on the subject. At the conclusion of the whole charge special requests were asked for, and the only one tendered on behalf of the defendant was given.

The trial judge did not charge that a confession was in evidence. Since the *Mi-*

*randa* rule applies to confessions, and had been argued so strenuously in attempting to suppress the content of the post-arrest interrogation, the trial judge apparently deemed the conditional charge on confessions appropriate.

While no literal confession was introduced, the charge did not say that one had. We find no prejudicial error.

The conviction is affirmed.

WALKER, P. J., and DUNCAN, J., concur.