**STATE of Tennessee, Appellee,**

v.

**Charles HAMILTON, Appellant.**

Court of Criminal Appeals of Tennessee.

Nov. 10, 1981.

Permission to Appeal Denied by Supreme Court March 1, 1982.

Lionel R. Barrett, Jr., Nashville, for appellant.

William M. Leech, Jr., State Atty. Gen., John C. Zimmermann, Asst. State Atty. Gen., Nashville, Elmer Davies, Dist. Atty. Gen., Joseph D. Baugh, Jr., Asst. Dist. Atty. Gen., Franklin, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of burglary and sentenced to serve not less than three (3) years nor more than fifteen (15) years. The defendant was also convicted of grand larceny and sentenced to serve not less than three (3) years nor more than ten (10) years.

The defendant says the trial court erred in ruling his motions to suppress were untimely filed, says the trial court erred in refusing to allow him to call the district attorney general as a witness to testify regarding plea negotiations, says the conviction for larceny is void because the indictment failed to charge him with the offense of larceny or because the indictment improperly alleged two separate offenses, burglary and larceny, in a single count, and

says the evidence is insufficient to corroborate the accomplice's testimony.

The judgment is affirmed.

On the morning of September 11, 1978, James and Edith Muggler and their son John left their home in the course of their daily routines. When Edith and John Muggler returned home that afternoon, they discovered their home had been burglarized. Mrs. Muggler called the Williamson County Sheriff's Department, and Thomas Akerson, a criminal investigator, was sent to the Muggler home.

Entry to the house had been gained through a window on the backside of the house. A tree in the backyard had been hit by a vehicle, and pieces of a taillight and backup light were found on the ground by the tree. These portions of broken plastic were identified as coming off of a 1972–1974 General Motors pickup truck with a narrow stepbed.

About three weeks after the burglary, Akerson spotted and stopped a 1972 Chevrolet pickup truck, which was damaged in the right rear fender with a broken taillight and backup light. The truck was driven by Robert Taylor, the owner, and the defendant was a passenger therein. Taylor and the defendant were arrested.

The pieces of broken plastic found in the Muggler yard matched with the broken taillight and backup light on Taylor's truck.

After the defendant was arrested, he was found to have in his possession a watch, which was later identified by John Muggler as one of the items taken during the burglary. Execution of a search warrant at the defendant's home revealed a red air tank, which was identified by James Muggler as an item taken during the burglary.

At the trial Taylor testified he, the defendant, and the defendant's brother, Mark Hamilton, burglarized the Muggler house on September 11, 1978, taking with them several items including some watches and a red air tank.

We hold the trial court did not err in ruling the defendant's motions to suppress were untimely filed. Motions to suppress evidence must be made prior to trial. Rule 12(b)(3) T.R.Cr.P. Failure to raise such defense or objection pre-trial constitutes a waiver of the objection unless good cause for failure to raise the objection timely is shown. Rule 12(f) T.R.Cr.P.

We agree with the trial judge's interpretation of Rule 12(b)(3) T.R.Cr.P. in which he stated "prior to trial" means sometime earlier than "the day of the trial when the jury is waiting in the hall." We think the rationale behind Rule 12(b)(3) T.R.Cr.P. as discussed in *Feagins v. State*, 596 S.W.2d 108 (Tenn.Cr.App.1979), and *State v. Davidson*, 606 S.W.2d 293 (Tenn.Cr. App.1980), supports this interpretation.

This Court in *Feagins, supra,* stated:

[The practice of requiring pre-trial motions] avoids interrupting a trial in progress [and] ... inconveniencing jurors and witnesses by requiring them to stand by idly while the court hears a motion to suppress. It is to the advantage of both the prosecution and defense to know prior to trial whether certain items will or will not be admitted into evidence. Granting the pre-trial motion might result in abandonment of the prosecution; if the pre-trial motion is denied, then the defendant may either plead guilty and gain whatever concession might be obtained from the State, or change his trial strategy.

This Court in *Davidson* stated the broad discovery rules now used make it a rare incidence for the defense not to be aware of evidence which will be introduced at trial. For this reason compliance with Rule 12 T.R.Cr.P. should be the rule rather than the exception.

The trial judge's interpretation of Rule 12(b)(3) T.R.Cr.P. is also supported by Rule 45(c) T.R.Cr.P., which provides in pertinent part, "[a] written motion ... and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing unless a different period is fixed by rule or order of the court." Rule 45(c) T.R.Cr.P. indicates the legislature intended for parties not to be unfairly surprised by motions of opponents.

■ We affirm the trial court's ruling on this issue. To do otherwise would defeat the purposes of Rule 12(b)(3). The defendant offered no excuse for the late filing of his motions. We find an absence of good cause for the failure to timely file the motions. Therefore, the defendant has waived the right to object to the evidence introduced at trial.

The defendant also contends he should have been permitted to call the district attorney general to testify regarding an alleged deal between the district attorney general and Taylor's attorney. The defendant claims this testimony was crucial because Taylor's testimony was the only direct evidence of the defendant's involvement in the burglary.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." In *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), an assistant United States attorney promised a key government witness immunity from prosecution if he would testify for the government. Failure by the government to reveal the promise constituted grounds for a new trial.

■ In the instant case we find the trial court did not err in refusing the defendant's request to call the district attorney general. Nothing in the record shows any evidence was suppressed regarding an agreement between the district attorney general and Taylor.

The district attorney general prior to trial related the following as constituting the content of conversations regarding plea negotiations and promises of leniency for Taylor in exchange for his testimony at trial:

I talked to the Attorney [Taylor's defense counsel] in this case, and I said, it would be helpful for him—and Mr. Monty Curry [Taylor's counsel], the attorney told me that he [defendant] really had wanted to get this off his mind. That he felt guilty about it and that he would testify proba-bly without any recommendation to leniency. But, I told the attorney that it would be taken into consideration if he testified in the case. And I may have even told the attorney that we would consider him for a suspended sentence. But, I can't remember whether I did that or not. But, I specifically do remember telling the attorney not to communicate to Mr. Taylor any of these offers, other than to tell him that it would be—that if he is to testify, to tell the truth and that he would not be immuned [sic] from perjury [sic].

The district attorney general then informed the court of the following conversation he had with Taylor:

But, I talked to Mr. Taylor after that [conversation with his defense counsel] and specifically said, he wouldn't know what the determination of it [the State's position on a petition for a suspended sentence] would be. That he [defendant] realized that he would still be liable for perjury [sic]. And that there was no deal for his testimony. And he said, well, he just wanted to testify, if there was any deal or not.

Taylor testified at trial he had not been promised anything except the help of the sheriff. He stated on cross-examination he was not promised leniency, and knew of no agreement between his counsel and the state.

We find there was no agreement between the state and Taylor regarding leniency in exchange for Taylor's cooperation. Therefore, the testimony of the district attorney general was irrelevant. Even if the conversation between the district attorney general and Taylor's attorney could be considered an agreement, there was no evidence his agreement was revealed to Taylor.

If the defendant wished to show whether Taylor's attorney had been offered a deal for Taylor's testimony, the attorney could have been called as a witness to show this. The attorney would not have been prohibited from testifying under the attorney-client privilege. "[A]n accomplice, who testifies

for the prosecution [as Taylor did] in such a way as to incriminate himself as well as others, waives the privileged character of communications with his attorney," 3 Wharton's Criminal Evidence § 561 (13th ed. 1973); cf. *State v. Charles E. Bobo, Jr.*, Washington County No. 149, CCA, filed July 19, 1981, at Knoxville.

 The defendant argues the conviction for larceny is void because the indictment failed to charge him with the offense of larceny or because the indictment improperly alleged two separate offenses, burglary and larceny, in a single count. We find this issue to be without merit. The indictment did charge the defendant with larceny although it was charged in a single count with burglary. The defendant has waived the right to complain on appeal of burglary and larceny being charged in a single count because no motion was made prior to trial to dismiss the indictment or to sever the offenses alleged in count one. Rule 12(b)(1) T.R.Cr.P.

The defendant contends the evidence is insufficient to corroborate the accomplice's testimony regarding the defendant's participation in the burglary.

In *Bush v. State*, 530 S.W.2d 95 (Tenn.Cr. App.1975), this Court stated:

> The corroboration necessary to support the testimony of an accomplice is some fact, testified to entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but that the defendant is implicated in it, and the corroboration must consist of some fact that affects the identity of the party accused.

Possession of recently stolen goods gives rise to an inference that the possessor has stolen them. *Bush v. State*, 541 S.W.2d 391 (Tenn.1976). Possession of recently stolen goods is also sufficient evidence to sustain a conviction for burglary. *Smart v. State*, 544 S.W.2d 109 (Tenn.Cr.App.1976); *Brown v. State*, 489 S.W.2d 855 (Tenn.Cr. App.1972).

In the case at hand, the unexplained possession by the defendant of the watch and air tank belonging to the Mugglers gave rise to an inference that the defendant committed the burglary. Therefore, we find this fact of possession by the defendant of stolen goods with the resulting inference is sufficient evidence to corroborate the accomplice's testimony and is sufficient for the jury to find guilt beyond a reasonable doubt. Rule 13(e) T.R.A.P.

DWYER and O'BRIEN, JJ., concur.