IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2005

## STATE OF TENNESSEE v. JEFFREY LEE SCALES

**Direct Appeal from the Circuit Court for Obion County**
**No. 4-70     William B. Acree, Jr., Judge**

_____

**No. W2004-03026-CCA-R3-CD  - Filed November 4, 2005**

_____

This is a direct appeal as of right from convictions on a jury verdict for burglary and theft of property.  The Defendant, Jeffrey Lee Scales, was sentenced to concurrent sentences of four years for his Class D felony burglary conviction and two years for his Class E felony theft conviction.  On appeal, the Defendant argues only one issue: there is insufficient evidence to find him guilty beyond a reasonable doubt of the two offenses for which he was convicted.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Jeffery T. Washburn, Dresden, Tennessee, for the appellant, Jeffrey Lee Scales.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant's two convictions arise out of his unlawful entry of an unoccupied house in Union City and theft of tools therefrom, in September of 2003.  The record reflects that a residential home in the process of being remodeled was broken into the morning of September 28, 2003, and several tools stored inside were stolen.  Later that day, these same tools were sold by the Defendant in Kentucky for such a low price that the purchaser became suspicious that the tools may have been stolen.  The purchaser contacted a local sheriff, who matched the description of the tools to those recently reported stolen from Union City.  The Defendant was subsequently arrested, and in February

of 2004 was indicted by an Obion County grand jury on one count of burglary, see Tenn. Code Ann. § 39-14-402(a)(3), and one count of theft of property valued between $500 and $1,000, see Tenn. Code Ann. § 39-14-103. The Defendant received a jury trial in September of 2004.

The evidence presented at trial reveals that the Defendant assisted Mr. Don Nettles to move into a house in Union City on Saturday, September 27, 2003. At some point during the course of the day, both Mr. Nettles and the Defendant peered into the window of the house next door, owned by Mr. Larry Mink, and observed ladders and various tools. Mr. Nettles testified that the Defendant left his house at 9:30 that evening. When Mr. Nettles awoke the next morning at approximately 8:30, he observed "an '87 blue S10 truck leaving out of the driveway." Mr. Nettles' house and Mr. Mink's adjoining house shared the same driveway. Mr. Nettles further testified that he "couldn't really tell who was driving," but that it was a "black man with a lower haircut." Furthermore, Mr. Nettles stated that "there was a ladder hanging off the truck."

The victim, Mr. Mink, testified that when he stopped working on his house at 3:30 on the afternoon of Friday, September 26, 2003, he left several tools locked in the house. When he returned the following Monday morning, he discovered the back door open. Two ladders, an air compressor, a pneumatic nail gun, and a miter saw were missing. Mr. Mink testified that the police ultimately recovered all of the stolen items and returned them to him, but that the value of the tools stolen was between $700 and $900.[1]

Mr. Joe Jackson, an acquaintance of the Defendant who had at various times in the past both employed him and purchased items from him, testified that the Defendant called him Sunday morning, September 28, 2003, and said he had several items for sale.[2] Later that afternoon, the Defendant drove to Mr. Jackson's house in Kentucky in a Chevrolet Corsica with all of the stolen tools except the two ladders. Mr. Jackson offered to purchase all the tools, including the ladders sight-unseen, for $155. The Defendant agreed to this sale. Mr. Jackson, suspicious of the bargain he was getting, asked if the tools were stolen. The Defendant replied "No." Mr. Jackson requested a receipt, and the Defendant provided one. Mr. Jackson further stated that the Defendant then left and returned later that same evening in a black pickup truck to deliver the two ladders.

Mr. Jackson felt so uneasy about this purchase that a day or two later he contacted a local sheriff's office and informed them that he got a "really good price" for some tools, and wanted to know if anyone had recently reported similar tools stolen. Shortly thereafter Officer Jeff Jackson of the Union City Police Department drove to Mr. Joe Jackson's house in Kentucky and took possession of the tools. Mr. Joe Jackson, who worked in the rental property and maintenance industry, testified that the tools were not new; the ladders were full of paint and the miter saw had

---

[1]On cross-examination, Mr. Mink clarified that the $700 to $900 figure was the amount it would cost to replace the stolen items with new tools. However, he also admitted the tools stolen were not new.

[2]Mr. Joe Jackson first testified that he received the call from the Defendant on Saturday evening, but on cross-examination admitted that his original police statement, which said the Defendant called him Sunday morning, was most likely correct because it was made closer to the time of the actual events.

a broken adjustment knob. He further stated that while the $155 he paid was not a fair price for the tools, he would have considered $400 too much to pay because of the inherent risk involved in used tools and because he intended to resell the tools himself for a profit.

Officer Jeff Jackson, an investigator with the Union City Police Department, testified that he was assigned Mr. Mink's burglary case. Officer Jackson was contacted by the Obion County Sheriff's Office about some tools Mr. Joe Jackson purchased at "a really good price." Officer Jackson drove up to Kentucky to investigate. Officer Jackson stated that he was certain that the tools Mr. Joe Jackson had were the same ones reported stolen by Mr. Mink, and he took possession of them. Mr. Mink later identified the tools as his.

The Defense called Ms. Jennifer Collins, who testified that the Defendant borrowed her black, 1985 Ford Ranger truck the afternoon of Sunday, September 28, 2003.

The Defendant testified and admitted that he did indeed eventually come into possession of tools belonging to Mr. Mink, but insisted he did not break into Mr. Mink's house and steal the tools. Rather, the Defendant stated that shortly after 9:00 Sunday morning, September 28, 2003, he happened upon a yard sale held behind some apartment buildings in Union City, and he there purchased the tools for $45. The Defendant testified that the man he purchased the tools from was "[s]ort of chunky, and he's short, and he had a lower haircut." Later, upon learning that the tools were stolen, the Defendant offered to find the man from the yard sale for the police, but testified he was unable to do so before being arrested.

The Defendant further stated that he often buys items from yard sales, which are common at the location he described, and cleans or repairs these items and then resells them for a profit. The Defendant also admitted that he called Mr. Joe Jackson that same Sunday morning and offered to sell the tools; that he first delivered some of the tools in a Chevrolet Corsica; and that he later delivered the ladders in Ms. Collins' truck. The Defendant testified that he did not own a vehicle himself.

On cross-examination, the Defendant admitted that the original written statement he gave to the police before he was arrested and charged with burglary and theft contained several discrepancies when compared to the testimony he had just given at trial. His original signed statement indicated that he purchased the tools at a yard sale on Friday, not Sunday; that he paid $30 for the items, not $45; and that he sold the items to Mr. Jackson for $140, not $155 as he testified at trial. The Defendant explained that he could not read or write, and that the police wrote the statement that he signed. Officer Rick Kelly of the Union City Police Department testified that the Defendant walked into the police station and asked to give a statement. Officer Kelly testified that he accurately wrote down what the defendant told him, read this statement back to the Defendant, and the Defendant signed it.

The jury found the Defendant guilty as charged on both the burglary and theft of property charges. The trial court sentenced the Defendant as a Range I, standard offender to four years for

the Class D felony burglary conviction and two years for the Class E felony theft conviction, with the two sentences to run concurrently. The Defendant timely filed a notice for a new trial and motion for a judgment of acquittal, both of which were denied. This appeal followed.

## ANALYSIS

In the Defendant's sole issue on appeal, he asserts that there is insufficient evidence for any rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of burglary and theft. In support of this assertion, the Defendant argues that the evidence fails to show that he entered the victim's house and committed a theft therein or that he "intentionally, knowingly, or recklessly obtained or exercised control over property owned by Mr. Mink without effective consent . . . and with the intent to deprive." In the alternative, the Defendant argues that the value of the items stolen was less than $500.

### I. Standard of Review

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

### II. Burglary

The Defendant was convicted of one count of burglary. Tennessee Code Annotated section 39-14-402(a)(3) defines burglary as follows: "[a] person commits burglary who, without the effective consent of the property owner: [e]nters a building and commits or attempts to commit a felony, theft or assault."

The Defendant claims there is insufficient evidence to prove that he entered the house owned by Mr. Mink and committed a theft therein. The Defendant argues that the State did not present any direct evidence that someone "had witnessed Mr. Scales entering the Mink house or removing the tools." The Defendant asserts that his consistent statements that he purchased the tools at a yard sale "was undisputed by the State during the trial." Furthermore, the Defendant asserts that Mr. Nettles, the only eyewitness to the crime that Sunday morning, testified that "he would have recognized Mr. Scales had he been driving the 1987 blue Chevrolet S-10 pick-up truck leaving the driveway," and therefore the "State's inability to place [the Defendant] at the scene of the crime or in the blue Chevrolet S-10 truck leaving the scene of the crime" demonstrates there was insufficient evidence produced at trial to convict him of burglary or theft.

It is well established that circumstantial evidence alone may be sufficient to support a conviction. See State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, the circumstantial evidence must be consistent with the guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory except that of guilt. See id. at 900. Moreover, if a conviction is based entirely on circumstantial evidence, the facts must be "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002) (citing State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). Deference clearly lies with the jury, as the weight of circumstantial evidence is a matter for the jury to determine. See State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985). Additionally, whether all other reasonable theories have been excluded by the evidence is also a question of fact for the jury. See Pruitt v. State, 460 S.W.2d 385, 390-91 (Tenn. Crim. App. 1970).

The evidence presented at trial established that at 8:30 on the morning of Sunday, September 28, 2003, Mr. Nettles witnessed a black man with a "lower hair cut" leave the scene of the crime in a blue Chevrolet truck with a ladder clearly visible. On redirect-examination Mr. Nettles clarified that while he would have recognized the Defendant if he saw his face, he did not see the face of the man in the blue Chevrolet truck and did not know if it was the Defendant or not.

The evidence also reveals that on the morning of the burglary, the Defendant contacted Mr. Joe Jackson and arranged to sell him the stolen tools. This Court has previously held that "unsatisfactorily explained possession of recently stolen property may be sufficient in and of itself to establish a burglary." State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995) (citing State v. Hamilton, 628 S.W.2d 742 (Tenn. Crim. App. 1981)). The Defendant claims that he purchased the tools from another man at a yard sale, but failed to present any evidence of the existence of this yard sale or his purported purchase of the tools from an unidentified third party. Additionally, the evidence shows, by the Defendant's own admission, that he was at the scene of the crime the day before the tools were stolen, peering into the window and observing some of the same tools he claimed to have purchased at a yard sale the next day.

It was within the jury's purview to discredit the Defendant's version of how he obtained the stolen items. The jury obviously found the Defendant's explanation to be unsatisfactory. As noted

above, questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236. Accordingly, we conclude that the evidence presented at trial, when viewed in the light most favorable to the State, was sufficient to support the jury's verdict that the Defendant entered the victim's house and committed the theft of the tools stored therein. This issue is without merit.

### III. Theft of Property Between $500 and $1,000

The Defendant also asserts that the State failed to provide sufficient evidence that he was guilty of the crime of theft of property between $500 and $1,000. A person commits theft of property if that person: 1) "knowingly obtains or exercises control over the property," 2) "with intent to deprive the owner" of the property, and 3) "without the owner's effective consent." Tenn. Code Ann. § 39-14-103. In addition to these three elements, the fact-finder must also determine the classification of the theft, based on the value of the property stolen. Theft of property valued at more than $500 but less than $1,000 is a Class E felony. See Tenn. Code Ann. § 39-14-105(2).

The Defendant asserts that the State "failed to meet the burden of proof to show that Mr. Scales either intentionally, knowingly, or recklessly obtained control over the property with the intent to deprive Mr. Mink of the property."[3] In support of this claim, the Defendant raises the same arguments he used in the challenge to his burglary conviction: failure of the State to present direct evidence of an eyewitness of the theft; the statement by Mr. Nettles that he would have recognized the Defendant if it indeed was him in the blue Chevrolet truck leaving the crime scene; and the Defendant's testimony that he came into possession of the stolen tools when he purchased them at a yard sale. For the reasons outlined above, we find the circumstantial evidence presented at trial was sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that the Defendant knowingly obtained the tools with the intent to deprive the owner of his property and without the rightful owner's consent. Accordingly, the Defendant's claim of insufficient evidence to support his conviction for theft of property is without merit.

The Defendant also asserts that if his theft conviction is upheld, the value of the stolen tools was less than $500 and therefore his conviction should be reduced to a Class A misdemeanor. In support of this assertion, the Defendant argues that the testimony from Mr. Mink valuing the tools at $700 to $900 pertained to the cost of replacement with new tools. However, the Defendant argues, the stolen tools were not new and Tennessee law requires the jury to find the "fair market value of the property . . . at the time and place of the offense," citing Tennessee Code Annotated section 39-11-106(a)(36)(A). Because the stolen property was recovered, the Defendant claims it was "available to be valued." The Defendant further notes that Mr. Joe Jackson, who is familiar with the used tool market, testified that he would not have paid $400 because it would have been too high a price for the used tools in question.

---

[3] We are of the opinion that the theft statute's mens rea element requires only "knowingly" obtaining or controlling property. See Tenn. Code Ann. § 39-14-103.

The record on appeal reflects that the jury was properly instructed on how to assess the value of the property stolen. The term "value," as used in the theft of property statutes, is defined as "[t]he fair market value of the property or service at the time and place of the offense; or [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." Tenn. Code Ann. § 39-11-106(a)(36)(A)(i) and (ii). We conclude that the jury had sufficient evidence before it to find that the fair market value of the stolen tools was above $500. Mr. Mink stated that the value of the property taken was between $700 and $900. Mr. Joe Jackson stated that $155 was so low it made him suspect the tools must have been stolen. The evidence further reveals that Mr. Jackson stated that he would not have paid $400 for the tools only because he planned to resell them himself and wanted to make a profit. Therefore, we conclude that there was sufficient evidence presented to the jury for it to conclude that the fair market value of the tools was over $500. This issue is without merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE