# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
January 26, 2010 Session

## STATE OF TENNESSEE v. WENDELL WAYNE SWEETON

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 261342     Don W. Poole, Judge**

---

**No. E2009-00012-CCA-R3-CD - Filed January 21, 2011**

---

The appellant, Wendell Wayne Sweeton, was convicted by a jury of driving under the influence (DUI), third offense. The trial court imposed a sentence of eleven months and twenty-nine days, with 150 days to be served in confinement and the remainder to be served on probation. On appeal, the appellant challenges the trial court's rulings regarding purported discovery and <u>Brady</u> violations, the denial of appellant's suppression motion, and the admissibility of the appellant's prior DUI convictions. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

C. Parke Masterson, Jr., Chattanooga, Tennessee, for the appellant, Wendell Wayne Sweeton.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William H. Cox, District Attorney General; and Cameron Williams and Brian Chapuran, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The proof adduced at trial revealed that Red Bank Police Officer Sean Shelton was working patrol on the night shift of May 27, 2006. At approximately 3:00 a.m, Officer Shelton was watching traffic from his police cruiser, which was parked in the parking lot of the Bridge Center located approximately half a block from the Cherokee Boulevard tunnel.

He saw the appellant, who was driving a silver 2001 Lincoln Continental, drive through the tunnel from Chattanooga in both the northbound and southbound lanes of traffic. Because the appellant crossed into the opposing lane without correcting, Officer Shelton activated his police cruiser's emergency lights and siren and began pursuit.

Officer Shelton, traveling north on Dayton Boulevard, saw the appellant "straddle[] both lanes." The appellant drove around a "blind curve," and Officer Shelton briefly lost sight of him. When he regained visual contact, he saw the appellant driving almost completely in the opposing lane. While the appellant was on Dayton Boulevard, "[m]ost of the time, he was occupying both lanes. Periodically, he would come back in his lane and coast back into [the] opposing lane of traffic." Officer Shelton observed no other traffic at that time.

At the intersection of Dayton Boulevard and Signal Mountain Road, the appellant pulled into the left turn lane and stopped. Officer Shelton parked his cruiser behind the appellant. He left his lights on but deactivated the siren, got out of his vehicle, and approached the appellant's car. When he was between the driver's side rear door and the front door of the appellant's vehicle, the appellant drove off, turning left onto Signal Mountain Road. Officer Shelton ran back to his car, activated his siren, and again pursued the appellant. At some point during the pursuit, Officer Shelton was joined by Officers Nicholas Dewey and David Spandau as well as three Chattanooga police officers who were each in separate vehicles.

Despite many opportunities to do so, the appellant did not pull off the road until he reached the parking lot of Austin Feed and Seed. Once the appellant stopped, Officer Shelton got out of his car and approached the appellant's vehicle with his gun drawn. Officer Shelton thought the appellant was fleeing from police and drew his gun for safety reasons. As he approached the appellant's vehicle, Officer Shelton repeatedly ordered the appellant to turn off his car and place his hands on the steering wheel. The appellant did not comply.

When Officer Shelton reached the appellant's vehicle, he saw the appellant slumped over the steering wheel. Officer Shelton could not see the appellant's hands because they were "down low." The appellant "kept falling back in his seat, falling back over the wheel, and didn't seem to know that [Officer Shelton] was standing at his door." Officer Shelton opened the driver's door and "escort[ed]" the appellant out of the vehicle. When the appellant was out of the vehicle, Officer Shelton reached into the vehicle and turned off the ignition. The Chattanooga officers left the scene once the appellant was out of the vehicle.

Officer Shelton had to support the appellant by the arm "because he couldn't remain balanced outside of the vehicle." Officer Shelton noticed "a strong odor of an alcoholic

beverage" coming from the appellant. Officer Shelton asked the appellant where he was going, and the appellant responded that he was going home. When Officer Shelton asked where he was coming from, the appellant said he had just left a bar called "the Big Chill." Officer Shelton asked the appellant why he had crossed into the opposing lane of traffic and had not stopped for police. Officer Shelton said the appellant did not seem to understand the question. At that point, Officer Shelton asked the appellant if he had been drinking, and the appellant replied that he had consumed four beers at the Big Chill. Officer Shelton noticed that the appellant's eyes were bloodshot and that his speech was very slurred.

Believing the appellant to be under the influence of alcohol, Officer Shelton asked the appellant to perform two field sobriety tests, the "walk-and-turn" and "the one-legged stand." The appellant agreed to perform the tests. Officer Shelton demonstrated the walk-and-turn test for the appellant and explained that

> the person submitting to the test is to take nine heel-to-toe steps in a straight line, with their arms down to their side, and counting each step out loud. On their ninth step, they're to stop, turn slowly, in baby steps, and then return where they came from on the line nine more steps, back where they started, with their heels touching their toes.

The appellant said he understood the test. However, when performing the test the appellant walked in the wrong direction, he did not count aloud, and he did not touch heel to toe. Officer Shelton had to instruct the appellant to return to the yellow line. In Officer Shelton's opinion, the appellant failed the walk-and-turn test.

Next, Officer Shelton had the appellant perform the one-legged stand. He demonstrated the test for the appellant and explained that

> you stand with your arms down to your side, you raise one leg, toe pointed outward approximately . . . six inches from the ground, and you count from one one thousand and one to one one thousand and thirty until an officer asks you to stop for your safety purposes.

The appellant said he understood the test. He fell backwards on his first two attempts. On the third try, the appellant raised his leg and "counted one one thousand and one, two thousand, three, four thousand, five, five, five thousand, four, and then stopped the test on his own." In Officer Shelton's opinion, the appellant failed the one-legged stand test.

Officer Shelton arrested the appellant for driving under the influence and transported him to the police station. Officer Shelton asked the appellant to take a breath alcohol test, and the appellant consented. Because Officer Shelton was not certified in conducting a breath alcohol test on the Intoximeter EC/IR II ("Intoximeter"), Officer Nicholas Dewey conducted the test. Officer Dewey observed the appellant for twenty minutes before conducting the test. The test revealed that the appellant's breath alcohol content was .16, twice the legal limit.

The appellant was convicted of DUI and DUI per se based upon the appellant's blood alcohol content. The trial court merged the convictions then proceeded to the second portion of the bifurcated proceedings, for the jury to determine the number of prior DUI convictions the appellant had. The State produced copies of convictions, demonstrating that the appellant had previously been convicted of DUI in Hamilton County, Tennessee, and in Fulton County, Georgia. Based upon this proof, the jury found the appellant guilty of DUI, third offense. Thereafter, the trial court imposed a sentence of eleven months and twenty-nine days and ordered the appellant to serve 150 days of his sentence in confinement and the remainder on probation.

## II. Analysis

### A. Discovery/Brady Violations

As his first issue, the appellant argues that the trial court erred by "not excluding evidence witheld (sic) from the defense in violation of Rule 16 and Brady v. Maryland[, 373 U.S. 83 (1963)]." Specifically, the appellant contends that the State violated discovery rules by failing to disclose information concerning the stop that Officer Shelton contemporaneously wrote in his notebook. Additionally, the appellant complains that at trial Officer Shelton's testimony revealed that the appellant had signed a medical form prior to booking, which was not disclosed during discovery.

At trial, Officer Shelton testified on cross-examination that he usually made notes in a small notebook regarding a suspect's performance of field sobriety tests then transferred the pertinent information from those notes to the affidavit of complaint accompanying the arrest report. Following Officer Shelton's response, defense counsel moved for a mistrial or, in the alternative, to have that information brought to court. Defense counsel argued that he had filed a pretrial motion for discovery, requesting "any notes made by the police officer in the investigation of this case." He maintained that a discovery violation occurred because the State failed to disclose the information contained in the notebook where Officer Shelton made notes about the appellant's performance on the field sobriety tests. During a voir dire examination, Officer Shelton stated that his notes included only cursory details, such as the

appellant's name and date of birth. The notes included the appellant's performance on the field sobriety tests, which was later documented in the affidavit of complaint. Officer Shelton said that his notes may have included the appellant's statement that he was coming from the Big Chill where he had four beers, but he also included that information in the affidavit of complaint.

Additionally, during direct examination Officer Shelton testified that he asked the appellant if he had any physical ailments which could impair his performance on the field sobriety tests, and the appellant said he did not. On cross-examination, the defense questioned Officer Shelton regarding whether the appellant could have been suffering from some malady, such as diabetes, which could have mimicked the signs of being under the influence of alcohol. Officer Shelton stated that while a diabetic attack could "show signs or symptoms of [an] impaired driver," the appellant did not appear to suffer such an ailment. On redirect, Officer Shelton testified that "anytime we book somebody in, we have a medical form they have to fill out, whether they're suicidal or they need emergency medical attention, and [the appellant] was asked those two questions after his arrest and he said no." Officer Shelton said that prior to booking, the appellant signed a form attesting that he did not require medical attention.

Regarding the officer's notebook, the trial court stated, "[Officer Shelton] says he doesn't have them or doesn't know where they are, I'm not going to require him to do something [when] he doesn't know where they are." The trial court found "that no Rule 16 violation was committed that would result in anything that the Court would do concerning this." The court further found that "the State has complied with the discovery request after multiple hearings concerning what was asked for." The court observed that defense counsel had thoroughly cross-examined witnesses about the information in the undisclosed documents.

First, we will address the appellant's assertion that the failure to disclose the materials violated discovery rules. Tennessee Rule of Criminal Procedure 16 governs the discovery rights of parties in a criminal proceedings. In pertinent part, Rule 16(a)(1)(F) provides that

> [u]pon a defendant's request, the state shall permit the defendant
> to inspect and copy or photograph . . . documents . . . or copies
> thereof, if the item is within the state's possession or control
> and:
>
> (i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

On appeal, the appellant acknowledges that he had the appellant's arrest report and the accompanying affidavit of complaint. In the affidavit, Officer Shelton stated that the appellant was unable to hold up his head in his vehicle and continuously slumped forward and backward in his seat. The affidavit reflected that when the appellant exited his vehicle, he "stated that he had 4 beers at the Big Chill and was on his way home." Officer Shelton testified that the information contained in his notes was cursory and included the appellant's name, date of birth, performance on the field sobriety tests, and, possibly, his statement about drinking beer at the Big Chill. The appellant argues that the medical form and the notebook "could be" helpful or material to his case. We conclude the appellant's argument is, at best, speculative. The appellant bears the burden of demonstrating "the degree to which the impediments to discovery hindered trial preparation and defense at trial." State v. Brown, 836 S.W.2d 530, 548 (Tenn. 1992). As we have stated, the appellant was aware of the substance of the contested information through the arrest report and affidavit. Accordingly, the appellant has not demonstrated how he was prejudiced by the alleged discovery violation. Thus, he is not entitled to relief on this basis.

We also conclude that the appellant is not entitled to relief under Brady. In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See also Giglio v. United States, 405 U.S. 150, 154 (1972); Hartman v. State, 896 S.W.2d 94, 101 (Tenn. 1995). However, a criminal defendant carries the burden of proving a Brady violation by a preponderance of the evidence. State v. Edgin, 902 S.W.2d 387, 389 (Tenn.1995); State v. Spurlock, 874 S.W.2d 602, 610 (Tenn. Crim. App. 1993). In order to carry his burden, a defendant must establish the following prerequisites:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

2. The State must have suppressed the information;

3. The information must have been favorable to the accused; and

-6-

4. The information must have been material.

Edgin, 902 S.W.2d at 389; see also Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001); Irick v. State, 973 S.W.2d 643, 657 (Tenn. Crim. App. 1998). This court has previously observed:

> The "prosecution is not required to disclose information that the accused already possesses or is able to obtain." State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). Although the State is not obligated to disclose the entirety of the investigatory police work in a case, the State is required to disclose all favorable evidence obtained by any person acting on the government's behalf. See Moore v. Illinois, 408 U.S. 786, 795 (1972)).

State v. Baldomero Galindo, No. E2009-00549-CCA-R3-CD, 2010 WL 4684469, at *17 (Tenn. Crim. App. at Knoxville, Nov. 19, 2010). The appellant has failed to establish that the contested information was favorable to him or that the information was material.

Additionally, regarding the so-called "medical report," we note that "[t]he prosecution is not required to disclose information that the accused already possesses or is able to obtain." State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). A brief conversation between defense counsel and the appellant would have revealed that the appellant did not have any medical conditions that would impair his performance on the field sobriety tests and that the appellant had filled out a form attesting that he did not require medical attention at the time of booking. "[T]he State is not obliged to make an investigation or to gather evidence for the defendant." State v. Michael Brown, No. 01C01-9711-CC-00518, 1999 WL 743610, at *3 (Tenn. Crim. App. at Nashville, Sept. 24, 1999) (citing State v. Reynolds, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984)).

We also note that the appellant has included a "laundry list" of alleged discovery/Brady violations, without supporting his additional complaints with argument. However, as with the foregoing contested information, the appellant failed to adduce proof that the information was material or favorable. The appellant's complaints as to the favorability of the evidence are speculative at best. Most of the contested information could have been discovered by the appellant with a little investigation. As the trial court noted, the State was not required to perform the appellant's investigation for him. The appellant is not entitled to relief on this basis.

### B. Miranda Violation

The appellant argues that the State violated his Fifth Amendment rights by asking him questions during the DUI stop. Specifically, the appellant contends that because Officer Shelton had his gun drawn when approaching the appellant's vehicle, the stop was turned into a custodial detention requiring <u>Miranda</u> warnings. On the first day of trial, the appellant filed a motion to suppress statements he made during the DUI stop because he was not apprised of his <u>Miranda</u> rights. Defense counsel stated that he filed the motion following a conversation with the appellant the week before trial. During the conversation, he learned that the "stop itself . . . may, perhaps, have been full-blown custody from the start" and would thus require <u>Miranda</u> warnings. The court noted that the case was almost two years old and that the motion was untimely. However, the court advised the appellant that he could "take the matter up at the time that the officer testifies." The appellant did not raise the issue during the officer's testimony.

Initially, the State contends that the appellant waived review of this issue by failing to pursue a pretrial motion to suppress and by failing to raise the motion during the officer's testimony. We agree. Tennessee Rule of Criminal Procedure 12(b)(2)(C) provides that a motion to suppress must be raised before trial. Additionally, the rule provides that a party waives any objection by failing to comply with rules requiring the issue to be raised prior to trial. Tenn. R. Crim. P. 12(f)(1). This court has explained that

> [t]he purpose of this rule is not only to avoid the unnecessary interruption and inefficiency in conducting jury trials caused by needlessly removing the jury from the courtroom for protracted suppression hearings, but also to ensure the right of the state to an appeal of an adverse ruling by the trial judge without placing the defendant twice in jeopardy.

<u>State v. Randolph</u>, 692 S.W.2d 37, 40 (Tenn. Crim. App. 1985). Moreover, "'prior to trial' means sometime earlier than 'the day of the trial when the jury is waiting in the hall.'" <u>State v. Hamilton</u>, 628 S.W.2d 742, 744 (Tenn. Crim. App. 1981). The trial court stated that although the case had been pending for nearly two years, defense counsel had failed to thoroughly interview his client until the week prior to trial when he finally learned the circumstances of the stop. The appellant failed to demonstrate good cause for failing to raise the issue earlier. <u>Id.</u> at 745. Accordingly, this issue is waived for failure to raise it prior to trial. <u>See</u> Tenn. R. Crim. P. 12(b)(3) and (f).

### C. Prior Conviction

As his final issue, the appellant argues that the State violated discovery by failing to disclose a ten-page document detailing the appellant's prior DUI conviction from Georgia.

As proof of the appellant's prior convictions, the State submitted a computer printout of the appellant's Tennessee driving record, which reflected that the appellant had prior DUI convictions in Tennessee and Georgia. As further proof of his Georgia DUI conviction, the State submitted a ten-page driving history from Georgia containing the appellant's guilty plea, the indictment, and the judgment of conviction. The appellant objected to both the Tennessee driving record and the Georgia driving history, first noting that he had received only an uncertified copy of the Tennessee driving record during discovery and second arguing that he never received the ten-page document. The trial court overruled both objections, finding that the Tennessee driving record was prima facie evidence of the appellant's prior convictions. At the motion for new trial hearing, the court stated that both the Georgia document and the Tennessee driving record were properly certified and admitted at trial.

The appellant contends that because of the "late disclosure" of the driving records, several objections were "missed." For example, the appellant contends that he would have challenged the certification of the Georgia document and complained about being furnished with an uncertified copy of the Tennessee driving record. We note that the appellant's Tennessee driving record was submitted as a computer printout from the Tennessee Department of Safety. Tennessee Code Annotated section 55-10-403(g)(3)(A) expressly provides that "[n]otwithstanding any other rule of evidence or law to the contrary, in the prosecution of second or subsequent offenders under this chapter the official driver record maintained by the department and produced upon a certified computer printout shall constitute prima facie evidence of the prior conviction." The appellant does not assert that there were any differences or inaccuracies in the uncertified copy he admittedly obtained prior to trial and the certified copy entered as an exhibit at trial. After our review of the record, we conclude that the appellant was properly on notice regarding this conviction and that the State properly disclosed this evidence prior to trial. See Tenn. R. Crim. P. 12.3(a). Accordingly, the appellant's Tennessee driving record was properly admitted at trial.

Next, we will address the appellant's complaint regarding the ten-page document which was offered as proof of the appellant's prior DUI conviction in Georgia. We agree with the State that regarding these Rule 16 and Brady complaints, the appellant has failed to demonstrate the Georgia documents were in the State's possession prior to trial, that the documents were suppressed by the State, that the documents were beneficial to the defense, or that his arguments regarding the authentication of the documents are material.

We note that defense counsel, who was much aggrieved by what he perceived to be continuing discovery violations, exhaustively pursued access to information from the State, making numerous objections and motions concerning the State's alleged failure to comply with Rule 16 and Brady. During one hearing regarding such a complaint, the trial court

-9-

observed that "apparently [the State] pick[s] you out, [defense counsel], as somebody not to help, because no one else seems to have that problem." During trial, the court also stated "that a limited amount of research on defense's side would have indicated, by talking to the witness[es], by reviewing the affidavit of complaint, would have revealed" much of the information defense counsel complained was not included in discovery. We agree with the trial court. The indictment charged the appellant with DUI and noted that he had previously been convicted of DUI in Fulton County, Georgia on January 5, 2004, and in Hamilton County, Tennessee on December 7, 2005. The State's notice to enhance listed these two previous convictions as well. Therefore, the appellant was on notice that the convictions would be used against him at trial, and he suffered no discernable prejudice from the delayed disclosure of the ten-page document. See Tenn. R. Crim. P. 12.3(a); State v. Cottrell, 868 S.W.2d 673, 676-77 (Tenn. Crim. App. 1992).

The appellant also maintains that the Georgia driving history was not properly certified for the following reasons:

> 1. "The first page, which purports to be a certification according to the Acts of Congress, is defective in that the third and final entry which purports to certify the attestation of A.L. Thompson . . . and his signature, was attested to on August 15, 2007, some seven days prior to A.L. Thompson signing the document on August 22, 2007."
>
> 2. "[I]t does not appear, at least on the copies, to bear what may be referred to as a seal."
>
> 3. On the document entitled "**Plea and Verdict**[,] . . . [n]o count numbers are indicated and no additional charges are listed. . . . The line for the defendant to sign however is **blank**."
>
> 4. The Georgia documents "appl[y] to multiple charges. . . . [A]reas . . . use capital A and capital B descriptions but do not identify what they refer to."

Despite the appellant's numerous complaints about the document, we conclude that the document is properly verified. See Tenn. R. Evid. 902.

Rule 902 provides that the following types of evidence do not require extrinsic evidence of authenticity:

(1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the State of Tennessee, the United States (or of any other state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands), or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution.

. . . .

(4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office (including data compilations in any form), certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or the Tennessee Legislature or rule prescribed by the Tennessee Supreme Court.

Tenn. R. Evid. 902(1) and (4). Contrary to the appellant's claim, the ten-page document bears, on each page, a seal. On one page, the seal is attested to by both the Deputy Clerk of Fulton County, Georgia, and of A.L. Thompson, "Judge of the State Court of Fulton County, Georgia." The documents reflect that the appellant was charged with and pled guilty to running a red light and two counts of DUI, which all merged into a single DUI count. The attached guilty plea was signed by the appellant and his attorney. Also attached is a judgment of conviction which reflects that counts "A, B2" were merged with count "B1." The documents all reflect the same case number. Accordingly, we conclude these documents were facially valid. See State v. Danny Ralph Troutman, No. E2007-01536-CCA-R3-CD, 2008 WL 4756874, at **4-7 (Tenn. Crim. App. at Knoxville, Oct. 30, 2008). The appellant is not entitled to relief on this basis.

### III. Conclusion

In sum, we conclude that the trial court properly ruled on the appellant's Rule 16/Brady motions, his suppression motion, and the admissibility of his prior DUI convictions. Accordingly, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE