IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2018 at Jackson

**STATE OF TENNESSEE v. DANIEL LEE MOONEYHAN**

**Appeal from the Circuit Court for Bedford County**
**No. 18027     Franklin L. Russell, Judge**

_____

**No. M2016-00476-CCA-R3-CD**

_____

The Defendant, Daniel Lee Mooneyhan, appeals his Bedford County convictions for Count 1: aggravated burglary, and Counts 2 and 4: theft of property between the value of $1,000 and $10,000, for which he received an effective sentence of five years with a 30% release eligibility, to serve in the Department of Correction. The Defendant contends that the evidence presented at trial was insufficient to support his convictions in Counts 1, 2, and 4 because the State offered no independent evidence to corroborate an accomplice's testimony about the Defendant's involvement in the offenses. The Defendant does not appeal his conviction in Count 3, felon in possession of a handgun. Upon review, we affirm the judgments of the convictions, but remand for merger of Counts 2 and 4.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**
**and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Jeremy W. Parham, Manchester, Tennessee, for the appellant, Daniel Lee Mooneyhan.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

In March 2015, the Bedford County Grand Jury indicted the Defendant on charges of aggravated burglary, two counts of theft of property between the value of $1,000 and

$10,000, felon in possession of a handgun, simple possession of a Schedule VI drug, and possession of drug paraphernalia. The Defendant filed a motion to sever the charges of simple possession of a Schedule VI drug and possession of drug paraphernalia from the remaining offenses, which the trial court granted before trial.

## A. Jury Trial

At trial, Jamie Blankenship testified that, prior to March 2013, he lived on Temple Ford Road in Bedford County with Kisha McGowan and their two children. However, he and Ms. McGowan ended their relationship in March 2012, and she no longer lived with him in March 2013. Mr. Blankenship testified that he had known the Defendant for over twenty years. He stated that the Defendant had been to his home on numerous occasions. Mr. Blankenship explained that he and Ms. McGowan dated for over eighteen years. He explained that, after their relationship ended, Ms. McGowan continued to visit his residence to see their children. Mr. Blankenship stated that Ms. McGowan was dating the Defendant at the time of the offense.

Mr. Blankenship worked at Nissan in Smyrna. He explained that the first few days of March 2013, he had car trouble, which caused him to have to stay in Smyrna at a friend's residence for three or four days. When he returned home on March 10, he saw that his front door was "wide open." He stated that the door had been closed and locked when he last left the residence. Mr. Blankenship did not notice any new damage to the door. When he entered the residence, Mr. Blankenship noticed that his 50-inch Toshiba LED television was gone, and he began looking to see if anything else had been stolen. He testified that the television was worth about $650. Mr. Blankenship recalled that two gas-powered remote-controlled trucks worth "[a]lmost $700 a piece" were also missing. Additionally, he found that his handgun had been taken, along with his PlayStation 3 and four to five PlayStation video games. He testified that the PlayStation 3 was worth $399 and that the videogames were worth about "$49, $59 a piece." Regarding his missing handgun, Mr. Blankenship stated that the gun was a "high-point 9 millimeter pistol[,]" which was worth "$179 plus tax." He further stated that a 50-round box of ammunition had been stolen and that it was worth about $40. Mr. Blankenship testified that, during the time period of March 6 to March 10, he had not given permission to anyone to enter his home and take his property.

After discovering that the items had been taken from the residence, Mr. Blankenship called the Bedford County Sheriff's Office ("BCSO") to report the crime. About a month later, the BCSO asked him to identify some items that had been recovered. Mr. Blankenship was able to identify his television, PlayStation 3 and video games, and two gas-powered remote control vehicles. Mr. Blankenship testified, however, that the recovered items were not in as good of a condition as they had been

before they were stolen. The sheriff's department did not recover Mr. Blankenship's handgun.

On cross-examination, Mr. Blankenship testified that his children stayed with Jeremy and Jennifer Jones while Mr. Blankenship was in Smyrna. Mr. Blankenship called Ms. McGowan and explained that he was having car trouble and would not be home. Mr. Blankenship asked Ms. McGowan if he could borrow some money to "get a starter for [his] car." He agreed that he saw no signs of a forced entry into the residence. Mr. Blankenship testified that Ms. McGowan had a key to his residence. He explained that Ms. McGowan came to his residence two or three times a month to visit with their children.

Kisha McGowan testified that, after she and Mr. Blankenship ended their relationship in 2012, she dated the Defendant. Ms. McGowan and the Defendant lived together with a friend, Frank Veal, during this time period. Ms. McGowan and the Defendant have one child together, who was born in February 2013. She had previously dated Mr. Blankenship for about eighteen years, and they had two children. After her relationship with Mr. Blankenship ended, she continued to visit Mr. Blankenship's residence to see her children, wash clothes, and clean the house. She testified that she had not been promised anything in exchange for her testimony against the Defendant. Prior to March 6, 2013, the Defendant asked her to "write a list of things" that he wanted Ms. McGowan to steal from Mr. Blankenship's residence, such as the gas-powered trucks, PlayStation 3, 50-inch television, and a handgun. One night in March 2013, the Defendant instructed Ms. McGowan to go to Mr. Blankenship's residence, and she took the list that the Defendant had dictated to her. The Defendant told Ms. McGowan that, if she wore her shoes when she committed the burglary, she should throw them away because "it had been raining[,]" and Mr. Blankenship could "look[] for shoe prints." Ms. McGowan said that she was not throwing her shoes away, so the Defendant gave her his shoes to wear during the crime. The first night the Defendant sent her out to Mr. Blankenship's residence, she instead went to the river and sat for a while. She returned to the Defendant, explaining that she "couldn't go in." When she returned to their residence without Mr. Blankenship's property, the Defendant was angry and "[p]ut[] his hands on [her]." The Defendant "raised his voice and told [Ms. McGowan] that [she] needed to go back the next night, and [she] didn't need to come back empty handed."

The following night, the Defendant accompanied Ms. McGowan to Mr. Blankenship's residence, and they entered the residence with Ms. McGowan's key. The Defendant helped her carry the 50-inch television out to her car, and he carried out one of

the gas-powered trucks.[1]  Ms. McGowan saw the Defendant take Mr. Blankenship's handgun.  After leaving Mr. Blankenship's residence, the Defendant and Ms. McGowan returned to their residence.  The Defendant put the 50-inch television in a detached garage in front of his truck; he put the remaining items in a "pink tote" and placed it in the attic.  Ms. McGowan stated that the "pink tote" belonged to the Defendant rather than to her.  She recalled that, a few days after the burglary, the Defendant bragged to a friend, Jason Bryan, about "all the stuff he had and show[ed] [Mr. Bryan] the stuff in the tote and the gun was also there."  Subsequently, the Defendant told Ms. McGowan of an encounter he had with Mr. Bryan.  The Defendant said he had taken the gun to Mr. Bryan to trade for some marijuana, but Mr. Bryan did not have any.  Therefore, the Defendant kept the gun.  Sometime later, Ms. McGowan overheard the Defendant on the telephone saying that he had sold the gun to one of his uncles.

In March 2013, prior to the offenses, Ms. McGowan leased an apartment at Bedford Manor.  In early April 2013, Ms. McGowan took her son to the hospital to be treated for RSV.  Ms. McGowan testified that while she was at the hospital with their son, the Defendant moved the stolen items from their former residence to her new apartment.  The apartment had been empty for approximately a month since she first leased it and received the keys.  The Defendant and their son lived with her, and stayed at her apartment as much as she did.  Ms. McGowan confirmed that the 50-inch television in her apartment, as well as the PlayStation 3, games, and remote controlled cars, were the same ones taken from Mr. Blankenship's home during the burglary.

Ms. McGowan testified that BCSO Detective-Sergeant Scott Jones called her while her son was in the hospital and asked her to come in to the BCSO as soon as she was able.  Later that same day, she received a call from the Defendant.  He told Ms. McGowan that he was in custody at the BCSO and instructed her to "say he didn't have nothing [sic] to do with" breaking into Mr. Blankenship's home.  He also instructed her not to say anything about the gun.  The BCSO charged Ms. McGowan with aggravated burglary and theft of property between the value of $1,000 and $10,000.

On cross-examination, Ms. McGowan stated that she would spend the night at Mr. Blankenship's home whenever the Defendant "kicked [her] out" and she had nowhere else to go.  She also testified that, although she had a key to her new apartment a few days before the burglary, they had not taken the stolen items to her apartment but instead stored the items at their former residence.  She explained that she did not give the Defendant a key to her new apartment until their son was hospitalized, at which point the Defendant began moving the stolen items from their former residence to her new

---

[1] Ms. McGowan's testimony was that the Defendant personally carried out three items, valued at approximately $1,529, from Mr. Blankenship's residence.

- 4 -

apartment. Ms. McGowan stated that Mr. Blankenship purchased the television, PlayStation 3, and games after they ended their relationship; they had not purchased them together. She testified that, even though the Defendant had not been inside Mr. Blankenship's house since Mr. Blankenship had purchased the items, the Defendant told her to write out a note of the things he wanted her to steal. Ms. McGowan explained that the Defendant must have heard about those items through mutual friends of Mr. Blankenship. Ms. McGowan had no explanation for why she did not go to her new apartment with her son when the Defendant was violent with her and demanded she steal from Mr. Blankenship. She testified that the night she and the Defendant burglarized Mr. Blankenship's home, they brought their two-month-old son along with them and left him in the back seat of the car in his infant carrier. Ms. McGowan said they slid the 50-inch television into the floor of the back seat with him. They placed all the other stolen items in the trunk of the car. She testified that, in May 2013, while she was at the home of Jeremy Jones on Shaw Road, the Defendant "was swapping licks to get me to say what he wanted," coercing her to exculpate him in front of her friend Felisha Elliott. She also testified that she recanted earlier sworn allegations of domestic assault against the Defendant because she was afraid of him.

Detective Jones testified that, on April 5, 2013, he received information which led him to a unit at Bedford Manor Apartments to investigate the burglary which occurred at Mr. Blankenship's residence. The Defendant opened the door of the apartment, and Detective Jones asked for his permission to enter to look for the stolen property. When the Defendant invited Detective Jones in, the detective immediately saw a large, flat-screen television sitting in the living room. One serial number was scratched off, but Detective Jones matched the serial number on the television's sticker to the serial number of the television stolen from Mr. Blankenship. Additionally, Detective Jones found several games and a PlayStation 3 with its serial number scratched off, which had also been reported stolen. Finally, Detective Jones located the two stolen remote-controlled cars in a back bedroom.

Initially, the Defendant told Detective Jones that he bought the PlayStation 3 "off the street" but had no explanation for the other property. He stated that the apartment belonged to Ms. McGowan but that he was "staying there" with her. Detective Jones confirmed that Ms. McGowan was the only person on the lease agreement. Additionally, Detective Jones found no specific property that belonged to the Defendant in the apartment. Ms. McGowan was at the hospital with the Defendant's son on the day of the search. Detective Jones called Ms. McGowan and asked her to come to the Sheriff's

Office when she was back in town from the hospital.[2] Detective Jones arrested the Defendant at Ms. McGowan's apartment and took him to the BCSO.

While Detective Jones prepared paperwork for the Defendant's arrest, he turned on the audio and video feeds to the room holding the Defendant. Detective Jones overheard the Defendant's side of a telephone conversation where the Defendant said he had "lied to police" and told the person on the phone to "stick with the same story." Detective Jones returned to the holding room, and the Defendant explained that he had been speaking to Ms. McGowan on the phone. At this point, the Defendant admitted to Detective Jones that he knew Ms. McGowan had been planning to break into Mr. Blankenship's home and take the property. The Defendant stated that he "was okay" with her taking Mr. Blankenship's property because he believed she had rights to it. Detective Jones testified that the Defendant "claimed he went to another location so he would create an alibi for himself" on the night of the burglary. Detective Jones did not record this interview, and the Defendant did not sign a written statement.

During a second interview on April 24, 2013, the Defendant confessed to Detective Jones that he had possession of the stolen handgun and had given it to Jason Bryan to sell. Because the Defendant was a convicted felon, Detective Jones then charged him with felon in possession of a handgun pursuant to Tennessee Code Annotated section 39-17-1307. Detective Jones did not record this interview, and the Defendant did not sign a written statement.

Mr. Blankenship went to the BCSO and identified the seized items from Ms. McGowan's apartment as his personal property. The BCSO returned the property to Mr. Blankenship, but he needed assistance from Detective Jones to carry the large television to his car. Detective Jones testified that he may have been able to carry the television by himself, but that it would have been "very difficult."

Marissa Ann Brown testified that her parents were best friends with the parents of the Defendant, and Ms. Brown and the Defendant had known each other their whole lives. She stated that she and the Defendant had been dating approximately two to three months before trial. Ms. Brown explained that she met Ms. McGowan in 2013 when she dated Ms. McGowan's cousin Casey Ward. Ms. Brown stated that on two separate occasions, Ms. McGowan told her that the Defendant "had nothing to do with" burglarizing Mr. Blankenship's home and stealing his property. On the second occasion, Ms. McGowan's brother was also present and told Ms. McGowan that she was "going to

---

[2] Based on the presentence report, entered as Sentencing Exhibit 1, when Detective Jones spoke to Ms. McGowan on the phone, she "admitted that she went by herself to [Mr. Blankenship's residence] and took the items found in her apartment." Neither Ms. McGowan nor Detective Jones testified to this statement at trial.

get in trouble" if she said the Defendant was not involved because she "already said that he had something to do with it."

The Defendant's mother, Donna Mooneyhan, testified that on the day the Defendant was arrested, Ms. McGowan told her that the Defendant was not involved with the offenses. Ms. McGowan informed Ms. Mooneyhan that she did not believe she was stealing because Mr. Blankenship's property "was just as much hers as it was his." Ms. McGowan told Ms. Mooneyhan that she burglarized Mr. Blankenship's house by herself.

Jeremy Jones testified that he had been a friend of both the Defendant and Ms. McGowan for several years. Mr. Jones heard Ms. McGowan say that the Defendant "wasn't with her at the time when she went and got" the items from Mr. Blankenship's house. Additionally, Mr. Jones testified that when the Defendant and Ms. McGowan were at his house, he was unaware of any incident where the Defendant was violent with Ms. McGowan in order to coerce her to exculpate him.

Felisha Elliott testified as to an altercation she witnessed between the Defendant and Ms. McGowan. At one point after the burglary, Ms. McGowan took Ms. Elliott with her to a residence on Shaw Road to meet with the Defendant. Ms. Elliott did not know who lived at the residence. She stated that the Defendant "kept asking [Ms. McGowan] the same questions and was hitting … her chest." Ms. Elliott did not remember much of what the Defendant was saying to Ms. McGowan or what they were arguing about during this altercation.[3] She only recalled the Defendant referring to his felony convictions.[4]

Ms. Elliott testified that she had known Ms. McGowan since they were children, and she also knew the Defendant. Ms. Elliott stated that on August 30, 2015, two days before trial, she received a text message from the Defendant requesting that they meet. She would not agree to meet but asked the Defendant what he wanted to talk about. In a telephone conversation, the Defendant asked Ms. Elliott to "go to court with him instead of Kisha [McGowan] and he would give [Ms. Elliott] some money." She declined his offer but told the Defendant she would speak with his attorney. The Defendant told her she needed to go to court to explain that she did not know anything about the situation. Ms. Elliott agreed that she did not know anything about the offenses.

---

[3] Defense counsel objected to this portion of Ms. Elliott's testimony on relevance and lack of foundation and requested a sidebar. After a conference with both counsel, the trial court permitted the State to continue to attempt to lay the foundation for Ms. Elliott's testimony.

[4] Once Ms. Elliott testified that the Defendant mentioned his prior felony convictions, defense counsel objected again on relevance and lack of foundation. The trial court instructed the State to discontinue this line of questioning, and then issued a limiting instruction to the jury to disregard all of Ms. Elliott's testimony to this point.

Following deliberations, the jury found the Defendant guilty of aggravated burglary, two counts of theft of property between the value of $1,000 and $10,000, and felon in possession of a handgun. The trial court sentenced the Defendant, as a Range I standard offender, to concurrent sentences of five years for aggravated burglary, three years on each count of theft of property between the value of $1,000 and $10,000, and one year and six months for felon in possession of a handgun, for a total effective sentence of five years in the Department of Correction, with a 30% release eligibility. The Defendant filed a timely motion for new trial, which the trial court denied in a written order after a hearing.[5] This timely appeal follows.

## II. Analysis

On appeal, the Defendant contends that the evidence presented at trial was insufficient to support his convictions of Count 1, aggravated burglary, and Counts 2 and 4, theft of property between the value of $1,000 and $10,000. He asserts that the State offered no independent evidence to corroborate Ms. McGowan's testimony as an accomplice to the Defendant's involvement in the burglary and theft in Counts 1 and 2. He further contends that the State offered insufficient evidence to convict the Defendant in Count 4 on the charge of theft of property with a value between $1,000 and $10,000. We will review these claims in turn.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at

---

[5] On the same day that the trial court denied the Defendant's motion for new trial, the Defendant entered a guilty plea to the charges of simple possession of a Schedule VI drug and possession of drug paraphernalia. Pursuant to a plea agreement, the Defendant received sentences of eleven months and twenty-nine days, which the trial court ordered to run concurrently with the Defendant's effective five-year sentence.

914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

Aggravated burglary is defined as the burglary of a habitation. Tenn. Code Ann. § 39-14-403 (2013). Burglary is defined as entering, without the owner's effective consent, a building "not open to the public, with intent to commit a felony, theft, or assault[.]" Tenn. Code Ann. § 39-14-402(a)(1) (2013). A habitation is "any structure . . . designed or adapted for the overnight accommodation of persons[.]" Tenn. Code Ann. § 39-14-401(1)(A) (2013).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a) (2013). Theft of property is a Class D felony if the value of the property obtained is $1,000 or more but less than $10,000. Tenn. Code Ann. § 39-14-105(a)(3) (2013). "A person commits an offense who possesses a handgun and has been convicted of a felony." Tenn. Code Ann. § 39-17-1307(c)(1) (2013).

### A. Criminal Responsibility: Counts One and Two

The evidence was sufficient for a rational juror to convict the Defendant under the theory of criminal responsibility for burglary and theft beyond a reasonable doubt. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a). As pertinent here, a person is criminally responsible for the conduct of another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not a separate crime but instead a theory by which the State may prove the defendant's guilt based upon another person's conduct. *State v. Osborne*, 251 S.W.3d 1, 16 (Tenn. Crim. App. 2007) (citing *State v. Mickens*, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003)).

"[U]nder the theory of criminal responsibility, presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred." *State v. Phillips*, 76 S.W.3d 1, 9 (Tenn. Crim. App. 2001). In order to be convicted of the crime, the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission. *State v. Maxey*,

898 S.W.2d 756, 757 (Tenn. Crim. App. 1994); *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988).

It is well-established in Tennessee case law that "a conviction may not be based upon the uncorroborated testimony of an accomplice." *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994) (citing *Monts v. State*, 379 S.W.2d 34, 43 (1964); *Stanley v. State*, 222 S.W.2d 384 (1949)), *superseded on other grounds by statute*. An accomplice is "one who knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime." *State v. Collier*, 411 S.W.3d 886, 894 (Tenn. 2013) (citing *State v. Bough*, 152 S.W.3d 453, 464 (Tenn. 2004); *Clapp v. State*, 30 S.W. 214, 216 (1895)). A witness is an accomplice of the defendant if "the alleged accomplice could be indicted for the same offense charged against the defendant." *Id.* (quoting *Monts*, 379 S.W.2d at 43). "Whether a witness' testimony has been sufficiently corroborated is a matter entrusted to the jury as the trier of fact." *Bigbee*, 885 S.W.2d at 803. Our supreme court has described the amount of evidence needed to corroborate an accomplice's testimony as the following:

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

*Id.* (quoting *State v. Gaylor*, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). "[O]nly slight circumstances are required to corroborate an accomplice's testimony." *State v. Griffis*, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997) (internal citations omitted). However, "[e]vidence which merely casts a suspicion on the [defendant] or establishes [that the defendant] had an opportunity to commit the crime in question" and "evidence that the accused was present at the [location] of the crime" is insufficient to corroborate an accomplice's testimony. *Id.* (citing *Bolton v. State*, 377 S.W.2d 936, 939 (Tenn. 1964); *Mathis v. State*, 590 S.W.2d 449, 455 (Tenn. 1979)). "Where there are multiple accomplices there must be additional corroboration, since accomplices cannot

- 10 -

corroborate each other." *State v. Green*, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995) (citing *Bethany v. State*, 565 S.W.2d 900 (Tenn. Crim. App. 1978)); *see also State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001).

### 1. Corroboration by Confession

The Defendant's confession to Detective Jones that he possessed the stolen handgun at some point after the burglary corroborates Ms. McGowan's testimony. A confession to police can serve as corroborating evidence for accomplice testimony. In *State v. Stanley Lawson*, the trial court convicted the Defendant of incest based on the testimony of his step-daughter as his consenting victim/accomplice. No. 01C01-9607-CR-00320, 1997 WL 661483, at *1-3 (Tenn. Crim. App. Oct. 24, 1997), *perm. app. denied* (Tenn. Apr. 13, 1998). To corroborate the victim/accomplice's testimony, officers submitted a taped conversation between the Defendant and his step-daughter, where the Defendant confessed to watching X-rated videos with the victim/accomplice and to acting out what they watched. *Id*. at *5.

> A confession must be considered in connection with all the other evidence to establish the defendant's guilt or innocence. The victim/accomplice's testimony was corroborated by the appellant's confession, and the appellant's confession was corroborated by the victim/accomplice's testimony. Thus while neither her testimony standing alone nor the confession standing alone would be sufficient to establish that the appellant had committed a crime, these bits of evidence taken together can establish the crime.

*Id*. The court in *Lawson* affirmed the judgments against the Defendant based on the mutual corroboration of the Defendant's confession with the victim/accomplice's testimony. *Id.* at *6, 14.

Here, the Defendant's confession to Detective Jones corroborates Ms. McGowan's account. The Defendant confessed to Detective Jones that at some point after the burglary, the Defendant had possession of the stolen handgun. Ms. McGowan's accomplice testimony established that the Defendant knowingly obtained or exercised control over the stolen items when the Defendant assisted her in entering Mr. Blankenship's residence and taking several items, including the handgun, together valued at greater than $1,000. Because the Defendant admitted to controlling the very stolen property Ms. McGowan testified to, his confession testimony, "independent[] of the accomplice's testimony, tend[s] to connect the [D]efendant with the commission of the crime." *State v. Sherrill,* 321 S.W.2d 811, 815 (Tenn. 1959). Further, while neither the Defendant's confession nor Ms. McGowan's accomplice testimony is sufficient standing

alone, "these bits of evidence taken together can establish the crime." *Lawson,* 1997 WL 661483, at *5.

### 2. Corroboration by Constructive Possession

The Defendant's constructive possession of the stolen goods corroborates Ms. McGowan's testimony. "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). The mere presence of a person in an area where stolen property is discovered is not, alone, sufficient to support a finding that the person possessed the stolen property. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "[A]lthough a defendant's mere presence at a place where [contraband is] found will not support an inference of possession, a person in possession of the premises where [contraband is] found may also be presumed to possess the [contraband] themselves." *State v. Ross*, 49 S.W.3d 833, 846 (Tenn. 2001) (internal citation omitted). Possession of recently stolen goods, whether actual or constructive, "gives rise to an inference that the [Defendant] has stolen them" and "may also be sufficient evidence to sustain a conviction for burglary." *State v. Tuttle*, 94 S.W.2d 926, 932 (Tenn. Crim. App. 1995). The "fact of possession by the defendant of stolen goods with the resulting inference is sufficient evidence to corroborate the accomplice's testimony and is sufficient for the jury to find guilt beyond a reasonable doubt." *State v. Hamilton*, 628 S.W.2d 742, 746 (Tenn. Crim. App. 1981).

Here, Ms. McGowan was the sole lessee of the apartment where the stolen items were found, and none of the Defendant's belongings were found in her apartment. He received a key to the apartment approximately one month after the commission of the offenses. However, the Defendant told Detective Jones that he "was staying" at Ms. McGowan's apartment, and he was the one who answered the door and gave consent for a search. Therefore, a rational juror could infer that the Defendant was a "person in possession of the premises" and thus constructively possessed the stolen property therein. His constructive possession of recently stolen goods "gives rise to an inference that the [Defendant had] stolen them[,]" *see Tuttle*, 914 S.W.2d at 932, and in this case, "is sufficient evidence to corroborate the accomplice's testimony and is sufficient for the jury to find guilt beyond a reasonable doubt." *Cf. Hamilton*, 628 S.W.2d at 746. Therefore, there was sufficient evidence for the jury to convict the Defendant of Counts 1 and 2, and we affirm these judgments.

**B. Count Four**

The evidence was sufficient for a rational juror to convict the Defendant beyond a reasonable doubt of knowingly exercising dominion or control over the personal property of Mr. Blankenship between the value of $1,000 and $10,000, without Mr. Blankenship's effective consent, and with the intent to deprive Mr. Blankenship of the property. The Defendant argues that the only stolen property he ever possessed was the high-point handgun worth $179, which is considerably less than the statutory amount of $1,000 to $10,000. Because Ms. McGowan was the sole lessee of the apartment where the other stolen goods were found, and because none of the Defendant's personal belongings were found in the house, the Defendant argues the evidence is insufficient to support his conviction of theft of anything other than the handgun. On appeal, the Defendant concedes that the jury had sufficient evidence "to find that he exercised control over the [h]igh-point handgun belonging to Mr. Blankenship."

Without citing authority, the State argues that the Defendant's concession on appeal that the jury had sufficient evidence that he possessed the handgun may be treated as a concession that he possessed the other stolen items as well. We disagree. At trial, the jury was free to draw the inference that his confession of possession of the handgun corroborated Ms. McGowan's testimony that he helped burglarize Mr. Blankenship's residence and, therefore, had taken possession of all the stolen items. However, the Defendant's limited concession on appeal does not create that inference.

Nevertheless, under the doctrine of constructive possession, the State sufficiently established the Defendant's culpability at trial. As we previously concluded, the Defendant constructively possessed the stolen items at Ms. McGowan's apartment. His constructive possession of recently stolen goods "gives rise to an inference that the [Defendant had] stolen them." *See Tuttle*, 914 S.W.2d at 932. Moreover, the Defendant initially lied to Detective Jones about how he obtained the PlayStation 3 and later indicated that he knew it was stolen. A rational juror could conclude that this inconsistency, in combination with the sum of evidence presented, established the Defendant's control, knowledge, and intent. Therefore, we affirm the judgment of the trial court for Count 4.

**C. Merger of Counts Two and Four**

The State charged the theft of property between the value of $1,000 and $10,000, pursuant to Tennessee Annotated Code section 39-14-103, under two alternative theories in Counts 2 and 4. The trial court should have merged these offenses upon conviction and sentencing. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment,

states, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution guarantees "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Cost. art. I, § 10. Both clauses provide three distinct protections: "(1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012).

Our supreme court announced our current double jeopardy analysis in *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012). In *Watkins*, the court abandoned the analysis provided previously in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), and adopted the "same elements" analysis delineated by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Therefore, whether dual convictions violate double jeopardy principles requires a determination of "whether the convictions arise from the same act or transaction." *Watkins*, 32 S.W.3d at 557. If the convictions arise from the same act or transaction, the second inquiry is whether the elements of the offenses are the same or whether one offense is a lesser included offense of the other. *Id.* If the elements are the same or one offense is a lesser included offense of the other, dual convictions violate double jeopardy principles. *Id.* Appellate courts "will presume that multiple convictions are not intended by the General Assembly" when the elements of the offenses are the same or when one offense is a lesser included offense of the other. *Id.*

The charged offenses in Counts 2 and 4, theft of property between the value of $1,000 and $10,000, were the same offense with the same elements. Because the jury convicted the Defendant of the same offense for the same transaction on two alternate theories, the trial court violated double jeopardy by not merging the convictions at sentencing. Therefore, we remand for merger of Counts 2 and 4.

### III. Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court. We remand for entry of amended judgment forms that reflect the merger of Counts 2 and 4.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 14 -